Argued and submitted November 7, 1991, judgment affirmed as to all defendant's convictions, sentences of death vacated and case remanded to circuit court for further proceedings March 26, 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# JEFFERY RAY WILLIAMS,
*Appellant.*

## (CC 88CR-1815; SC S36193)

828 P2d 1006

David E. Groom, Portland, argued the cause and filed the briefs for appellant.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Ann Kelley and Brenda J Peterson, Assistant Attorneys General, and Stephanie S. Andrus, Certified Law Student, Salem.

GRABER, J.

Peterson, J., filed a dissenting opinion.

Fadeley, J., filed a dissenting opinion.

Unis, J., filed a dissenting opinion in which Fadeley, J., joins and Peterson, J., joins in part.

## GRABER, J.

This case comes before us on automatic and direct review of judgments of conviction of aggravated murder and sentences of death. ORS 163.150(1)(f) (1987). Defendant seeks reversal of his convictions of aggravated murder. In the alternative, he asks this court to vacate his sentences of death and remand his case to the circuit court for a new penalty phase trial. Defendant also seeks reversal of his convictions of noncapital crimes.[1] We affirm defendant's convictions, vacate his sentences of death, and remand the case to the circuit court for further proceedings consistent with this opinion.

## I. SUMMARY OF FACTS

Because the jury found defendant guilty, we review the facts in the light most favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). This case involves the second defendant convicted of murdering two young German women who were on vacation in the United States. The women were hitchhiking from California to Oregon when they met defendant and David Simonsen. Witnesses testified that they saw defendant, Simonsen, and the two women together on August 31, 1988, the day that the women were murdered. Another witness saw defendant and Simonsen later that day without the two women, but with the women's possessions. The bodies of the two women were found in a secluded spot in Coos County. They were bound and nude from the waist down and had been shot in the head at close range with a sawed-off shotgun. Simonsen confessed to having shot the women. He pleaded guilty and was sentenced to death. *See State v. Simonsen*, 310 Or 412, 798 P2d 241 (1990) (reviewing sentences).

The indictment against defendant contained 11 counts, including 6 counts of aggravated murder.[2] The state's

---

[1] ORAP 12.10(2) provides:

"If, in addition to a conviction for aggravated murder forming the basis for the death sentence, a defendant is convicted of one or more charges arising from the same charging instrument, the Supreme Court shall have jurisdiction to review any such conviction without the filing of a notice of appeal."

[2] Defendant was charged with aggravated murder on three different theories, and, under each theory, he was charged in separate counts with killing each woman. The three theories were: murder where there was "more than one murder victim in the same criminal episode," ORS 163.095(1)(d); murder committed "in an effort to

theory of the case was that defendant had ordered Simonsen to shoot the two women, or, at least, had actively participated in their deaths. The state offered evidence that defendant exercised an inordinate amount of control over Simonsen, referring to him at times as his "robot"; that defendant had made statements to other witnesses implicating himself in the murders; and that, after the murders, defendant possessed some of the victims' property.

Defendant was convicted of four counts of aggravated murder, two counts of felony murder, two counts of conspiracy to commit murder, two counts of first degree kidnapping, and one count of being a convicted felon in possession of a firearm. In the penalty phase, the jury answered "yes" to the three questions posed by ORS 163.150(1) (1987), and the trial court entered sentences of death.[3]

## II. GUILT PHASE
## ASSIGNMENTS OF ERROR

A. *Motion to Dismiss Counts of Aggravated Felony Murder*

Defendant first assigns as error the trial court's failure to dismiss the aggravated murder counts that were based on a felony murder theory.[4] Under ORS 163.095(2)(d),

---

conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime," ORS 163.095(2)(e); and aggravated felony murder, ORS 163.095(2)(d). Defendant was also charged with two counts of conspiracy to commit murder, ORS 161.450; two counts of first degree kidnapping, ORS 163.235(1)(c); and one count of convicted felon in possession of a firearm, ORS 166.270(1).

[3] The trial court held that all convictions and sentences, with the exception of the conviction of being a convicted felon in possession of a firearm, would merge into two convictions of aggravated murder and two sentences of death — one for each victim — and that the other convictions would be dismissed if the case were affirmed on appeal. We express no opinion as to the correctness of that procedure.

[4] ORS 163.095(2)(d) provides:

" '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:
"* * * * *
"(2)(d) Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)."

ORS 163.115(1)(b) provides in part:

the defendant must commit the murder "personally." Defendant asked the trial court to remove the aggravated felony murder counts from the jury's consideration, contending that he did not commit the murders personally, because Simonsen admitted to pulling the trigger. The trial court evidently agreed, because it *granted* defendant's motion for judgments of acquittal on those counts at the end of the state's case-in-chief. There is no error about which to complain.[5]

B. *Sufficiency of Evidence*

1. *Aggravated Murder*

■ Defendant next argues that the trial court improperly denied his motion for judgments of acquittal on all counts of aggravated murder. Defendant argues that the state did not produce sufficient evidence to permit the jury to find that he committed the crimes charged.[6] Specifically, defendant asserts that he may not be convicted on entirely circumstantial evidence; that there was no evidence that he was at the

---

"Except as provided in ORS 163.118 and 163.125, criminal homicide constitutes murder:

"* * * * *

"(b) When it is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(E) Kidnapping in the second degree as defined in ORS 163.225;

"* * * * *

"(G) Robbery in the first degree as defined in ORS 164.415;

"(H) Any felony sexual offense in the first degree defined in this chapter[.]"

[5] Although the trial court removed the counts of *aggravated* felony murder from the jury, it did allow simple felony murder counts to go to the jury. Only the aggravated felony murder statute contains the requirement that defendant had to commit the murder "personally." *Compare* ORS 163.095(2)(d) *with* ORS 163.115(1)(b). Defendant does not assign error to the jury's consideration of the simple felony murder counts.

[6] ORS 136.445 provides in part:

"The court shall grant the motion [for judgments of acquittal] if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

scene at the time of the murders; and that there was no evidence that he either ordered Simonsen to kill the women or actively participated in the killings.

▬ In ruling on a challenge that the evidence of a crime is insufficient for the jury to have convicted a defendant, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Walton*, 311 Or 223, 241, 809 P2d 81 (1991). This court has rejected defendant's argument that evidence that is "entirely circumstantial" can never be sufficient evidence to convict. *See State v. Lerch*, 296 Or 377, 396, 677 P2d 678 ((1984) ("It was the intention of this court in [*State v.*] *Krummacher*[, 269 Or 125, 139, 523 P2d 1009 (1974),] to abolish any distinction between direct and circumstantial evidence as to degree of proof.").

Defendant contends that there was no evidence that he was present at the murders. We disagree.

Defendant's wife testified that he left home on a trip, a few days before the murders, without any possessions except a paper bag containing clothes. At 2:30 p.m. on the day of the murders, two witnesses testified that they saw defendant, Simonsen, and the two victims at a restaurant, which was a three-hour drive south of the scene of the murders. All four left the restaurant at about 3 p.m. in defendant's pickup truck, which headed north on Highway 101. At 6:45 p.m., a police officer issued defendant a speeding ticket at a point four and one-half miles from the scene of the crimes. The officer testified that there were no women passengers in the truck, but that he saw several items that were later identified as the victims' possessions. In addition, at the scene, criminalists found shoe prints that were similar to prints made by defendant's shoes, tire prints similar to prints made by the tires on defendant's truck, and fibers similar to the those in the carpet in defendant's truck. That evidence was sufficient to permit the jury to find that defendant was at the scene of the crimes at the time of the murders.

Defendant also argues that there was insufficient evidence that he ordered Simonsen to kill the women or that he actively participated in the murders. Assuming *arguendo*

that either was a necessary element of any of the theories of criminal responsibility under which defendant was convicted, we disagree with defendant's argument.

As discussed above, there was circumstantial evidence that defendant was at the scene of the crimes at the time of the murders. In addition, defendant's cousin testified that defendant and Simonsen visited her on September 3, 1988, a few days after the murders. During that visit, defendant called Simonsen his "robot" and said that "one time he had Dave [Simonsen] take care of it and Dave went 'boom, boom.' " The witness demonstrated that defendant had pretended to shoot a gun when he made that statement. Defendant also told other witnesses, shortly after the murders, that he and Simonsen had "dusted a couple of dudes," "robbed a couple of dead niggers," and "ma[de] headlines." Numerous other witnesses testified that defendant exercised great control over Simonsen and that defendant sometimes referred to Simonsen as his "robot." Defendant told witnesses that Simonsen "took care of business" for him and would do what he wanted. Finally, on the day of the murders, defendant was seen with the victims and later without the victims but with their possessions. There was sufficient evidence for the jury to find that defendant ordered Simonsen to kill the two victims or that he participated actively in the murders.

The evidence, and the reasonable inferences that the jury could have drawn from it, were sufficient to allow the jury to find defendant guilty of aggravated murder beyond a reasonable doubt. The trial court correctly denied defendant's motion for judgments of acquittal on all counts of aggravated murder.

### 2. *Attempted Sexual Abuse in the First Degree*

Defendant assigns error to the trial court's instructions to the jury that it could consider the crimes of attempted first degree rape and attempted first degree sexual abuse as crimes underlying both the aggravated murder theory based on concealment of the identity of the perpetrator of a separate crime, ORS 163.095(2)(e), and on the felony murder counts, ORS 163.115(1)(b).[7] Defendant does not argue that the

---

[7] Defendant assumes that aggravated murder based on concealment of a crime requires proof of the underlying crime whose commission, or the identity of whose

instructions stated the law incorrectly. Rather, he argues that there was insufficient evidence to justify instructing the jury on those underlying crimes.

We need not consider whether there was sufficient evidence of attempted first degree rape, because the verdict form shows that the jury did not agree unanimously that the state had proved attempted first degree rape. The trial court instructed the jury that it must agree unanimously on all underlying crimes. It follows that the jury did not use attempted first degree rape as an underlying crime in any of defendant's convictions. Even assuming that it was error to instruct the jury on attempted rape in the first degree, therefore, any error was harmless.

■■ The jury did find attempted first degree sexual abuse to be an underlying crime in some of defendant's convictions; therefore, we consider whether there was sufficient evidence of that crime. For evidence of an attempted crime to be sufficient, the evidence must permit a rational conclusion that defendant intentionally engaged in conduct that constituted a substantial step toward the commission of the charged crime. *State v. Walters*, 311 Or 80, 84, 804 P2d 1164, *cert den* ___ US ___, 111 S Ct 2807, 115 L Ed 2d 979 (1991). To constitute a substantial step, the act must "advance the criminal purpose charged and * * * provide some verification of the existence of that purpose." 311 Or at 85.

The pertinent statute, ORS 163.425(1)(a)(B) (1983), provided that:

> "A person commits the crime of sexual abuse in the first degree when that person:
>
> "(a) Subjects another person to sexual contact; and
> "* * * * *
>
> "(B) The victim is subjected to forcible compulsion by the actor * * *."

■ The evidence in this case is sufficient to permit a rational conclusion that defendant intentionally engaged in conduct that constituted a substantial step toward the commission of first degree sexual abuse. The relevant evidence

---

perpetrator, the murderer is attempting to conceal. We do not address the correctness of that assumption here, because we decide the claim on another ground.

includes photographs of the victims' bodies. Their hands were bound behind their backs, and they were nude from the waist down with their pants and underpants pulled completely off one leg and down around the other ankle. The victims were lying on their backs and each had been shot in the head. A rational juror could find that defendant removed the victims' pants or forced them to do so. Leaving the victims naked from the waist down can constitute a "substantial step" toward the commission of sexual abuse. Removing the victims' clothing also advanced the criminal purpose of forcing sexual contact and provided verification of the existence of that purpose. There was sufficient evidence for rational jurors to infer beyond a reasonable doubt that defendant committed attempted sexual abuse. The trial court did not err in submitting that question to the jury.

C. *Admission of Photographs*

1. *Photographs of Victims While Alive*

During the guilt phase, the trial court admitted into evidence several photographs of the victims taken while they were alive. Defendant challenged the admission of those photographs in a pre-trial motion, and he renews that challenge here. He claims that the photographs were irrelevant[8] and unduly prejudicial[9] and that some of them were admitted pursuant to an unconstitutional statute. The trial court admitted the various photographs for different reasons.

Exhibits 38 and 39 were admitted pursuant to ORS 41.415, which provides:

"In a prosecution for any criminal homicide, a photograph of the victim while alive *shall* be admissible evidence when offered by the district attorney to show the general appearance and condition of the victim while alive." (Emphasis added.)

---

[8] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[9] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

The district attorney offered Exhibits 38 and 39 to show the general appearance and condition of the victims while alive; each photograph showed only one of the victims.

The guilt phase of an aggravated murder trial is a "prosecution for [a] criminal homicide." ORS 163.005, 163.095, 163.115. Defendant's argument that the trial court should not have admitted the photographs, because they were irrelevant or unduly prejudicial, is not well taken. ORS 41.415 directs the trial court to admit such photographs in a prosecution for a criminal homicide if the district attorney offers them to show the general appearance and condition of the victims while alive. The statute, in effect, declares the photographs to be relevant and not subject to balancing under OEC 403. *See State v. King, supra,* 307 Or at 334-37 (the words *"shall* be admitted"* (emphasis added) in OEC 609(1) *require* trial courts to admit evidence of prior convictions for the purpose of impeaching a criminal defendant without engaging in the discretionary balancing process envisioned by OEC 403).

■ Defendant also contends that ORS 41.415 is unconstitutional, because it violates the Eighth Amendment to the United States Constitution.[10] Specifically, defendant argues that a photograph introduced pursuant to the statute in the guilt phase of the trial automatically becomes evidence that the jury can consider in the penalty phase of the trial and that such a photograph inherently is unfair to the defendant in the penalty phase.[11] This court rejected the same argument in *State v. Nefstad,* 309 Or 523, 560, 789 P2d 1326 (1990). We are not persuaded that we should overrule *Nefstad.* The statute under which the trial court admitted Exhibits 38 and

---

[10] The Eighth Amendment to the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[11] Defendant relies on *Booth v. Maryland,* 482 US 496, 107 S Ct 2529, 96 L Ed 2d 440 (1987), which held that the prosecutor could not introduce evidence about the impact of the murder on the victim's family in a capital sentencing hearing. Assuming that *Booth's* holding concerning a "victim impact statement" in the penalty phase had a bearing on defendant's argument concerning the admission in the guilt phase of a photograph showing "the general appearance and condition of the victim while alive," the Supreme Court of the United States overruled the broad holding of *Booth* in *Payne v. Tennessee,* 501 US ___, 111 S Ct 2597, 2611 n 2, 115 L Ed 2d 720 (1991).

39 is not unconstitutional on the theory that defendant advances.

■ Exhibit 37 contained a packet of six photographs that two witnesses had used to make out-of-court identifications of the two women whom they saw with defendant and Simonsen on the day of the murders. The two witnesses testified at trial and were subject to cross-examination concerning their out-of-court identifications. The state introduced the photographs during those witnesses' testimony at trial concerning their prior out-of-court statements of identification.[12]

Defendant claims that the photographs in Exhibit 37 were irrelevant. Evidence that increases, even slightly, the probability of the existence of a material fact is relevant evidence. OEC 401; *State v. Walton, supra,* 311 Or at 232. The photographs in Exhibit 37 increased the probability that defendant was with the victims on the day of the murders. Evidence that the women whom the witnesses had seen with defendant on the day of the murders were in fact the victims was critical to placing defendant with the victims and at the scene of the murders. That was a material fact in issue. Defendant argued at trial that the state did not prove that he was ever with the victims or at the scene of the crimes.

■■ Neither were the photographs in Exhibit 37 unduly prejudicial. All evidence presented by one party is intended to prejudice the opposing party, *i.e.*, to increase the likelihood that the opposing party will lose the case. *State v. Pinnell,* 311 Or 98, 105 n 12, 806 P2d 110 (1991). The relevant inquiry is whether the evidence was *unfairly* prejudicial. OEC 403; *State v. Smith,* 310 Or 1, 20, 791 P2d 836 (1990). The trial court's ruling is reviewed for abuse of discretion, and this court generally defers to the trial court's decision whether the probative value of the evidence is substantially outweighed by

---

[12] OEC 801(4)(a)(C) provides:

"A statement is not hearsay if:

"(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

"\* \* \* \* \*

"(C) One of identification of a person made after perceiving the person."

the potential for prejudice. *State v. Rose*, 311 Or 274, 291, 810 P2d 839 (1991); *State v. Walton, supra*, 311 Or at 234.

Defendant does not explain how the photographs *unfairly* prejudiced him. They were typical photographs of two women taken on a vacation and were not unusually sympathetic in nature. We find no abuse of discretion here and, thus, no error.

Exhibits 85, 87, 90, and 91 were photographs that showed the victims, while alive, with items of personal property later found in defendant's control. Defendant claims that the photographs were irrelevant, "because it was not disputed at trial that the girls were killed or that the property was in possession of the people with whom it was found." That argument is unpersuasive, because the state had to prove the connection between defendant and the murders, which *was* disputed at trial. The photographs were relevant to show that the property that witnesses saw with *defendant* belonged to the *victims*. Moreover, defendant was charged with robbing the victims as an underlying crime in some of the murder counts. That defendant was seen with the victims' possessions is relevant to an essential element of robbery.

Defendant next argues that, even if Exhibits 85, 87, 90, and 91 were relevant, they were unfairly prejudicial. The trial court ruled that the probative value of those exhibits was not substantially outweighed by their potential for unfair prejudice. The trial court did not err in making that ruling.

In summary, the trial court did not err in admitting Exhibits 37, 38, 39, 85, 87, 90, and 91.

### 2. *Photographs and Impressions of Defendant's Tires*

The state introduced photographs of tire prints taken of the tires on defendant's truck and the inked impressions from those tires. The state presented evidence through Oregon State Police criminalist Michael Scanlon concerning the tire tracks found at the scene of the murders. Scanlon took photographs of the tire tracks at the scene on the day that the police found the victims' bodies. At trial, Scanlon described the photographs taken at the scene and compared them to

photographs that he had taken of defendant's tires and the inked impressions of those tires. He testified that the tire impressions at the scene had the same tread design, style, and pattern of wear as the tires on defendant's truck. He also testified that the tracks at the scene were of "insufficient clarity to make a positive match" with defendant's tires, because he could not match fine details.

Defendant contends that the photographs had no probative value, because Scanlon could not say "conclusively" that the tire tracks at the scene matched defendant's tires. The question is not whether the evidence is "conclusive," however, but only whether the proffered evidence has any tendency to prove or disprove a fact that is of consequence to the determination of the action. OEC 401; *State v. Clowes*, 310 Or 686, 691-92, 801 P2d 789 (1990).

Scanlon's testimony that the tire impressions at the scene had the same tread design, style, and pattern of wear as the tires on defendant's truck increased the probability that defendant's truck had been at the scene of the murders. That defendant's truck had been at the scene was a material fact in issue. The trial court properly admitted the evidence.

D. *Trial Judge's Demeanor*

This assignment of error concerns the actions of the trial judge in regard to one witness, Dawna Urich. Urich had cohabited with defendant at one time, and they had a daughter. The state called her to testify.

During Urich's testimony, defense counsel objected to some of the prosecutor's questions on the grounds that the state was leading the witness and that the questions were not relevant. The trial court ruled:

> "No, I think it's relevant to an issue. I think it's relevant to the issue of the defendant's doing something with the witnesses that can show some evidence, some knowledge, one, and two, at this point in time I think that leading is proper with this witness. I don't think it has happened with other witnesses and I am going to allow it with this witness at this time. I also think the evidence is relevant."

Defense counsel made no further objections.

The state asked another question, and Urich asked to make a statement. The trial court excused the jury to explain to the witness that she could not make a statement. The trial court then explained to defense counsel that he was allowing leading questions, because the witness was showing some hostility and being evasive,[13] and also explained why he thought that the evidence was relevant. At that point, defense counsel made a new objection:

> "[W]hen I made the objection on relevance as to the evidence that is coming out of this witness, when you ruled as to the relevance, Your Honor, I am sure you don't realize you did it, but you looked right at the jury and gave great emphasis in your voice and the way you said it in saying it was relevant, and you said that three times, and I think that you have colored this evidence to the point now that the jury thinks that whatever this lady says is going to be critical to their verdict. I think you have drawn more attention to this witness and this testimony than it deserves, and also you have drawn more attention to it than anything in this trial. I was very taken back by that. I know you didn't do it intentionally, but it was done, Your Honor, and I don't think there is any way that you can correct that."

Defendant renews only that complaint, but not his objections about relevance and leading questions, to this court.

Defendant contends that the inflection of the trial judge's voice and the way that he looked at the jury made the ruling improper. The trial judge denied that he had emphasized the ruling or looked at the jury in a significant way while making the ruling. Moreover, the trial judge had instructed the jury at the beginning of the trial that it was not to place undue emphasis on, or try to surmise why he made, any ruling about the admissibility of evidence. The record does not support defendant's contention that the trial judge unduly emphasized the evidentiary ruling.

Defendant also argues that the trial judge intimidated the witness into "say[ing] things that she would not otherwise say." The trial judge did tell the witness, outside the presence of the jury, to tell the truth. That apparently was

---

[13] OEC 611(3) provides in part that:

"When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."

a warranted admonition to this witness, because she admitted at trial that she had lied to the grand jury, and she was claiming at trial that she had not given an earlier recorded statement to a police officer, which the officer said that she had. Nothing in the record indicates that the trial judge acted in an intimidating or overbearing manner.

The record does not demonstrate that the trial judge erred in the particulars complained of in its treatment of witness Dawna Urich.

E. *Instructions*

1. *Presence at the Scene of the Crime*

The trial court refused to give defendant's requested instructions that "mere presence at or near the scene [of the crime] is insufficient evidence upon which to base a conviction" and that "mere presence at the scene, even with knowledge of commission of the crime is not enough to make one chargeable as an accomplice." The trial court correctly instructed the jury on what it would need to find affirmatively in order to conclude that defendant had aided and abetted in the crimes. The trial court refused to give defendant's requested instructions about "mere presence," because it concluded that the subject of the requested instructions was a matter for argument. Defendant challenges that refusal as erroneous.

This court rejected the same argument in *State v. Nefstad, supra,* 309 Or at 549-50:

"The focus of defendant Nefstad's argument on appeal is that the jurors should have been instructed that his mere presence at the scene of the crime * * * would have been an insufficient basis for them to find him guilty on an aiding and abetting theory. Defendant Nefstad's requested instructions, however, stated merely the converse of the instructions that were given: under the court's instructions defendant Nefstad could not have been found guilty on an aiding-and-abetting theory unless the jury found beyond a reasonable doubt that he, with intent to promote or make easier the crimes charged, encouraged, procured, advised, or assisted by act or advice the planning or the commission [of] the crimes alleged. If the jury had concluded that defendant Nefstad merely had been present at the scene of the murder or merely had associated with defendant Miranda, it could

not have found defendant Nefstad criminally liable on an aiding-and-abetting theory under the court's instructions. Whether the evidence was sufficient to show that defendant Nefstad encouraged, procured, assisted, or advised defendant Miranda in the commission of the crimes charged was a matter that could have been argued to the jury. Thus no instruction by the trial court on *. * * mere presence * * * was required."

*See also Hall v. The May Dept. Stores*, 292 Or 131, 143-44, 637 P2d 126 (1981) ("Ordinarily, if a jury is correctly instructed on those elements that it must find in order to reach an affirmative conclusion, a court need not go further and submit the opposing side's version of various circumstances that would *not* suffice to reach the disputed conclusion.") (emphasis in original).

Defendant asserts that his case is distinguishable from *State v. Nefstad*, because "only circumstantial evidence placed him at the scene." We have rejected a categorical distinction between direct and circumstantial evidence above. 313 Or at 24. This case is not distinguishable from *State v. Nefstad* in any way that would require a different outcome on this point. There was no error in refusing to give the requested instructions on "mere presence."

### 2. *Reasonable Doubt*

At the close of the guilt phase, the trial court gave this instruction about the state's burden of proof:

"The defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt.

"The burden is upon the State to prove the guilt of the defendant beyond a reasonable doubt as to each charged offense or lesser included offense. The defendant has no burden of proof except as to an affirmative defense.

" 'Reasonable doubt' means an honest uncertainty as to the guilt of the defendant. It is based on common sense and reason. Reasonable doubt exists when, after careful and impartial consideration of all the evidence in the case, you do not feel convinced to a moral certainty that the defendant is guilty. Proof beyond a reasonable doubt is such as you would be willing to act upon in the most important of your own affairs. Reasonable doubt, though, is not every doubt, because everything depending upon moral evidence is open to some possible or imaginary doubt."

Defendant excepted to the use of the phrase "moral certainty." He also excepted to the last sentence. He argued that the instruction would lead jurors to base their verdict on the perceived moral reprehensibility of defendant, rather than "dispassionately weighing the evidence" to determine whether the state had proved its case.

All but the last sentence of the disputed instruction comes from Uniform Criminal Jury Instruction 1006. The uniform instruction derives from Chief Justice Shaw's charge to the jury in *Commonwealth v. Webster*, 59 Mass (5 Cush) 295, 320 (1850). Chief Justice Shaw's charge is the basis of the reasonable doubt instruction in many jurisdictions. McCormick, Evidence 963, § 341 (3d ed 1984); Morano, *A Reexamination of the Development of the Reasonable Doubt Rule*, 55 BU L Rev 507, 522-23 (1975).[14]

The last sentence of the instruction also derives from Chief Justice Shaw's charge. *Commonwealth v. Webster*, *supra*, 59 Mass at 320. Although some jurisdictions include that wording in their statutory definitions of reasonable doubt, *see* Cal Penal Code § 1096; Guam Crim Proc Code § 90.23(a); Ohio Rev Code § 2901.05(D), it is not part of Oregon's statutes or uniform jury instructions.

Defendant asks us to declare that Oregon's uniform jury instruction is erroneous, because it uses the term "moral certainty." He asks that his conviction be reversed on the grounds that the last sentence of the instruction was erroneous and that the error prejudiced him. Defendant bases his argument on state law and the federal constitution. We first consider the argument based on state law. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) (state law argument considered first).

Justice Bean, writing the opinion of the court in *State v. Morey*, 25 Or 241, 256-57, 35 P 655 (1894), described the problems that courts had encountered in defining reasonable doubt:

---

[14] The concept of reasonable doubt predates *Commonwealth v. Webster*, *supra*. *See State v. Thomas*, 311 Or 182, 185 nn 2 & 3, 806 P2d 689 (1991) (tracing the history of the requirement of proof beyond a reasonable doubt). The specific formulation of reasonable doubt that is challenged in this case derives from *Webster*, however.

> "[I]nnumerable efforts have been made by the courts to define the expression 'reasonable doubt,' as used in the criminal law, but so far none of them have met with universal approval, or been remarkable for accuracy of expression or clearness of thought, and in many jurisdictions the courts have declined to enter into any explanation of what the term means, because it is believed the term itself is as well calculated to convey to the mind of the juror its own meaning as any definition which can be given, and that to try to give a specific meaning to the word reasonable is * * * 'trying to count what is not number, and to measure what is not space.' * * *

> "The utmost confusion exists in the adjudged cases in this matter of definition, and instances abound in the books where the same definition has been held error in one jurisdiction and as correct in another, and this is even true in the same state. * * * This [confusion] grows out of the inadequacy of language to make plainer, by further definition or refining, a term the meaning of which is within the comprehension of every person capable of understanding common English."

That description of the state of the law, made nearly 100 years ago, is a remarkably apt description of its current confused state as well. *See, e.g., United States v. Pepe*, 501 F2d 1142, 1143-44 (10th Cir 1974) (courts must define "reasonable doubt"); *United States v. Hall*, 854 F2d 1036, 1037-39 (7th Cir 1988) (courts are strongly discouraged from attempting to define "reasonable doubt"); *United States v. Nolasco*, 926 F2d 869, 872 (9th Cir), *cert den* ___ US ___, 112 S Ct 111, 116 L Ed 2d 80 (1991) (trial court has discretion to define or not to define "reasonable doubt"); *People v. Hewlett*, 519 NYS2d 555, 133 AD2d 417, 418 (1987) (it is reversible error to use the phrase "moral certainty"); *Monk v. Zelez*, 901 F2d 885, 890 (10th Cir 1990) ("moral certainty" phrase can compensate for other part of instruction that impermissibly tends to lessen the burden of proof). Here, defendant requested a similar instruction ("reasonable doubt means a doubt that is not unreasonable") to the one that the defendant in *State v. Morey* attacked, and he attacks the term "moral certainty," which the defendant in *State v. Roberts*, 15 Or 187, 13 P 896 (1887), specifically sought to have included in the instruction in his case.

Oregon law is clear, however, on one point. Including the term "moral certainty" in an instruction defining

reasonable doubt is not necessarily error. In *State v. Robinson*, 235 Or 524, 385 P2d 754 (1963), this court considered an instruction that contained the phrase, "the evidence must establish the truth of the fact to a moral certainty." In upholding the use of that phrase, this court wrote:

> "Many definitions have come before this court for review, and we have in the past honored definitions which, like the one given in this case, equate 'reasonable doubt' with 'establishing the truth to a moral certainty.' *State v. Abrams*, 11 Or 169, 8 P 327; *State v. Morey*, 25 Or 241, 36 P 573; *State v. Roberts*, 15 Or 187, 13 P 896." 235 Or at 528.

Although the term "moral certainty" is not particularly helpful to the jury, its use in the context of the instruction in this case is innocuous or, if anything, helpful to defendant. *See, e.g.*, McBaine, *"Burden of Proof: Degrees of Belief,"* 32 Cal L Rev 242, 258-59 (1944) ("To use the phrase moral certainty may convey the idea to the jury that absolute certainty is required."); *Monk v. Zelez, supra*, 901 F2d at 890 (use of the term "moral certainty" could mitigate impact of other wording in instruction that might have lessened the state's burden of proof); *United States v. Smaldone*, 485 F2d 1333, 1348 (10th Cir 1973), *cert den* 416 US 936 (1974) (inclusion of the term "moral certainty" mitigated impact of otherwise suspect reasonable doubt instruction); *State v. Crenshaw*, 51 Ohio App 2d 163, 366 NE2d 84, 85 (1977) ("firmly convinced" is an appropriate, but lesser standard than convinced to a "moral certainty"). We do not endorse or require the use of the phrase "moral certainty," but we adhere to the view that its use in an instruction defining reasonable doubt is not necessarily erroneous.

Defendant next challenges the instruction based on the inclusion of the last sentence, which told the jury that reasonable doubt "is not every doubt, because everything depending upon moral evidence is open to some possible or imaginary doubt." In construing a reasonable doubt instruction, this court wrote:

> "The office of the instructions to the jurors is to inform them as to the law of the case so that they will know the governing rules. When a charge to the jury is examined for error the proper inquiry is how the instruction would naturally be understood by the average people who compose juries. If the instruction is correct as to the law and is not

couched in phraseology which is, by chance, misleading, the court has committed no error in giving [the instruction]."
*State v. Robinson, supra,* 235 Or at 527

Unless a reasonable doubt instruction misleads the jury to believe that it can convict on a lesser degree of proof than that required, the court will not find error. *State v. Roberts, supra,* 15 Or at 196-97. For an instruction to constitute reversible error, it must have prejudiced the defendant when the instructions are considered as a whole. *State v. Brown,* 310 Or 347, 356, 800 P2d 259 (1990).

Defendant claims that the last sentence of the instruction was erroneous for three reasons: It invited the jurors to base their verdict on moral standards, rather than on the evidence; it may have confused the jury; and it diluted the burden of proof. We address each of those contentions in turn.

First, reasonable jurors, hearing this instruction *in context,* would not base a decision on anything other than the evidence in the case. The trial court instructed the jurors, when defining reasonable doubt, to consider all of the evidence in the case carefully and impartially. The trial court also instructed the jurors at the beginning of trial, during trial, and at the end of trial that their role was to evaluate the evidence and that they were to remain impartial and dispassionate in that task.[15]

---

[15] For example, the trial court gave instructions at the end of trial that:

"It is your responsibility to make all the decisions about the facts in this case. You must evaluate the evidence to determine how reliable or how believable that evidence is. When you make your decision about the facts, you must apply the legal rules to those facts and reach your verdict. * * *

"* * * * *

"* * * Your verdict should be based only upon the evidence and these instructions.

"The attorneys' statements and arguments are not evidence. If your recollection of the evidence is different from the attorneys' recollection, you must rely upon your own memory.

"In deciding this case you are to consider all evidence that you find worthy of belief. It is your duty to weigh the evidence calmly and dispassionately, and to decide this case upon its merits. You are not to allow bias, sympathy or prejudice any place in your deliberations."

In the first two transcript pages of the charge to the jury, the trial court referred to "evidence" ten times and to "facts" three times.

■ We turn next to defendant's contention that the instruction was reversible error, because the phrase "moral evidence" may have confused the jury. Defendant contends that, "whether the 'moral evidence' phrase reduced the standard of reasonable doubt, or whether it was merely confusing," its use warrants reversal. We agree that the phrase "moral evidence" is archaic and obscure,[16] and we disapprove of its use. We are not persuaded that its use in this case was reversible error, however.[17]

■ An instruction that contains a confusing phrase might be reversible error if the jury were left without guidance about the proper standard to apply in deciding the case. That is not the situation here. Although the phrase "moral evidence" is confusing, the instruction *as a whole* informed the jury correctly about the state's burden of proof.

Defendant argues that the phrase "reasonable doubt" is its own best explanation. Many courts, including this one, have voiced agreement with that proposition. *See, e.g., State v. Robinson, supra,* 235 Or at 528 ("reasonable doubt" is a term so commonly known and understood that it requires no embellishment); *State of Oregon v. Monk,* 199 Or 165, 193, 260 P2d 474 (1953) (quoting *People v. Klein,* 305 Ill 141 [, 137 NE 145 (1922),] that "[t]here is no more lucid definition of the term 'reasonable doubt' than the term itself"); *State v. Morey, supra,* 25 Or at 257 (reasonable doubt is within the comprehension of every person capable of understanding common English and further definition cannot make it plainer). If defendant is right, then the jury knew the correct burden of proof to apply when it was told that "defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt" and that the "burden is upon the State to prove the guilt of the defendant beyond a reasonable doubt as to each charged offense or lesser included

---

[16] When Chief Justice Shaw employed the phrase in *Commonwealth v. Webster,* 59 Mass (5 Cush) 295, 320 (1850), it may have referred to "evidence of internal facts [about defendant] such as [his] intent or motive." *People v. Brigham,* 25 Cal 3d 283, 157 Cal Rptr 905, 599 P2d 100, 108 (1979) (Mosk, J., concurring).

[17] We note that, in *People v. Brigham, supra* note 16, which forms the centerpiece of Justice Unis' dissent, the defendant's conviction was *affirmed.* The court there held that the giving of an instruction on reasonable doubt that contained this wording was harmless, not prejudicial, in the circumstances.

offense" — unless the phrase "moral evidence" detracted from the correct standard.

■ That leads us to the inquiry whether the last sentence of the instruction could have misled the jury to convict on a lesser burden of proof. Defendant argues to this court — although he did not argue it to the trial court — that a juror hearing the phrase that everything is "open to some possible or imaginary doubt" would subject every doubt that he or she had to the question whether the doubt was imaginary. Defendant contends that "some very real doubts might be unreasonable but, at the same time, a doubt in a juror's imagination might not be unreasonable." We do not agree that "reasonable" doubt includes "imaginary" doubt. *See State v. Morey*, *supra*, 25 Or at 257 (a reasonable doubt is not an imaginary doubt). Although the phrase "open to some possible or imaginary doubt" is not instructive, and we discourage its use, its inclusion in this instance, in the context of the instructions as a whole, was not reversible error.

We conclude that the instruction was not reversible error under state law. That is consistent with this court's prior decisions. *See, e.g., State v. Monk*, *supra*, 199 Or at 195 (although "[p]ossibly nothing was gained by way of clarity through incorporating into the attacked instruction all of its terms," the instruction was nonetheless adequate); *State v. Morey*, *supra*, 25 Or at 259 (upholding a reasonable doubt instruction where the disputed language was "subject to the criticism that it does not define, but needs defining," because the instruction as a whole was not misleading).

■ Having determined that the instruction was not reversible error under state law, we turn to defendant's due process argument.[18] In state criminal trials, the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the accused against conviction except upon proof beyond a reasonable doubt of the facts that constitute the crime with which the accused is charged. *In re Winship*, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970). In *Cage v. Louisiana*, 498 US 39, 111 S Ct 328, 112 L Ed 2d 339

---

[18] Defendant did not make a state constitutional argument. *See State v. Clark*, 291 Or 231, 235 n 4, 630 P2d 810 (1981) (" 'due process' must refer to [the] federal clause * * * since the phrase does not appear in the Oregon Constitution").

(1990), the Supreme Court of the United States concluded that the reasonable doubt instruction in a state's capital trial did not comply with the standard set in *Winship*.

The Supreme Court, in construing the instruction, considered how reasonable jurors could have understood the charge as a whole. *Cage v. Louisiana, supra*, 498 US at ____, 111 S Ct at 329, 112 L Ed 2d at 342. The instruction equated reasonable doubt with a "grave uncertainty", and an "actual substantial doubt" and stated that conviction required a "moral certainty" that defendant was guilty. *Ibid*. The Court held:

> "It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Ibid*.[19]

Defendant contends that the instruction given in his case was similarly infirm. He makes the same points as he raised in arguing that the instruction was infirm under state law. The federal standard for reasonable doubt is substantially the same as our own. Thus, we find defendant's arguments under federal law unpersuasive for the same reasons as discussed above.

Defendant makes one additional point under federal law. He asserts that *Cage v. Louisiana, supra*, stands for the proposition that any instruction on reasonable doubt containing the phrase "moral certainty" is erroneous *per se*. We disagree with his reading of *Cage*. There, the Court explicitly viewed the instructions as a whole. Although it disapproved the use of the phrase "moral certainty," it found error because the trial court had used "moral certainty" in conjunction with the phrases "grave doubt" and "substantial doubt," which suggested a higher degree of doubt than is

---

[19] On remand from the Supreme Court of the United States, the state court held that giving the instruction was harmless error. The Supreme Court of the United States denied *certiorari. State v. Cage*, 583 So 2d 1125 (La), *cert den* ____ US ____, 112 S Ct 211, 116 L Ed 2d 170 (1991).

required for a "reasonable" doubt. We do not read *Cage* to suggest that every instruction containing the phrase "moral certainty" is necessarily erroneous. *See, e.g., Gaskins v. McKellar*, ___ US ___, 111 S Ct 2277, 114 L Ed 2d 728 (1991) (Stevens, J., opinion on denial of *certiorari*) (suggesting that the flaw in the *Cage* instruction was the phrase "grave uncertainty"); *United States v. Nolasco, supra*, 926 F2d at 871 (*Cage* instruction erroneous, because it equated reasonable doubt with "grave uncertainty" and "actual substantial doubt"); *State v. Manning*, 409 SE2d 372, 374 (SC 1991), *cert den* ___ US ___, 112 S Ct 1282, 117 L Ed 2d 507 (1992) (inclusion of phrase "moral certainty" is constitutional error only when combined with other terms that suggest a higher degree of doubt than that required).

We conclude that, although the disputed portion of the instruction was not informative, and we do not endorse its use in other cases, the jury could not reasonably have construed it either to decrease the state's burden of proof or to allow the jury to base its decision on anything other than the evidence. The giving of the instruction on reasonable doubt was not reversible error.

### III. PENALTY PHASE ASSIGNMENTS OF ERROR

#### A. *Instruction on Mitigating Evidence*

Defendant assigns as error the trial court's failure to instruct the jury, during the penalty phase, that it should consider mitigating evidence about him. As the state concedes, the instructions were inadequate to comply with this court's opinion in *State v. Wagner*, 309 Or 5, 14-20, 786 P2d 93, *cert den* ___ US ___, 111 S Ct 212, 112 L Ed 2d 171 (1990), which was decided after the trial in this case. Therefore, we vacate defendant's sentences of death and remand this case to the circuit court for further proceedings.

#### B. *Evidence of Drug Dealing*

■ Defendant objects to evidence, introduced during the penalty phase, that he possessed, used, and sold drugs. He claims that that evidence was not relevant.[20] The state

---

[20] Defendant does not argue that the probative value of this evidence is substantially outweighed by its potential for prejudice.

responds that the evidence was relevant to the issue whether defendant would be dangerous in the future.

Witnesses testified that defendant burned people's houses and cars, threatened them with guns, and threatened to kill them, because they had not paid their debts for purchases of drugs, had refused to purchase drugs from defendant, or had given his name to others as a drug dealer. Defendant himself admitted that he will be violent as long as he has a drug problem.

Evidence that goes to the question of defendant's future probable violent behavior is relevant during the penalty phase. *State v. Farrar*, 309 Or-132, 175, 786 P2d 161, *cert den ___ US ___*, 111 S Ct 212, 112 L Ed 2d 171 (1990); *State v. Moen*, 309 Or 45, 76, 786 P2d 111 (1990); ORS 163.150(1)(b)(B) (1987) (jury must determine whether there is a probability that the defendant will commit future criminal acts of violence constituting a continuing threat to society). The challenged evidence bore directly on the issue of future dangerousness. The trial court did not err in admitting that evidence.

C. *Defendant's Statement of Desire to Rape*

During the penalty phase, a former co-worker of defendant's testified that defendant had told him that he would like to rape a "girl," that it was something that he had thought about, and that he thought that it would be thrilling to do it. Defendant objected at trial that that evidence was too prejudicial to be admitted. In this court, defendant also argues that the evidence was irrelevant.

Defendant's statements were relevant, because they indicated that he may act violently toward women in the future. The trial court did not abuse its discretion in ruling that the probative value of the statements was not substantially outweighed by the potential for prejudice. Accordingly, defendant's claim of error is not well taken.

D. *Testimony about Board of Parole Practices*

Defendant next argues that the trial court erred by excluding testimony from an employee of the Board of Parole concerning the Board's legal interpretation of aggravated murder sentencing options and its view of its statutory

authority if consecutive sentences were to be imposed. The trial court did not err in excluding that evidence. It is the function of the trial court, not witnesses, to inform the jury about the law. *See State v. Brown, supra,* 310 Or at 355 (trial court has a statutory obligation, ORCP 59B, to state all matters of law to the jury necessary for their information in giving their verdict); *State v. Nefstad, supra,* 309 Or at 551 (similar).

■ Defendant also contends that the trial court improperly excluded evidence that the costs of administering the death penalty outweigh the costs of imprisonment for life. The trial court properly excluded that evidence, because the issue that it addressed was a matter of policy properly reserved for the legislative branch, not a jury.

## IV. CONCLUSION

We have considered all of defendant's assignments of error and supporting arguments. Any assignment or argument that we have not discussed either has been considered by this court previously and decided adversely to defendant, is unpersuasive, or is unlikely to recur on remand. We find that there was no reversible error on the assignments of error that we have not discussed.

The judgment is affirmed as to all of defendant's convictions. The sentences of death are vacated, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

**PETERSON, J.,** dissenting.

I join in the dissent of Unis, J., with this exception. The instruction violated defendant's rights under ORS 10.095(6) and ORS 136.415. It is unnecessary to go further, insofar as state law is concerned. I would not reach the Article I, section 33, question or the federal question.

**FADELEY, J.,** dissenting.

I dissent for the reasons stated in *State v. Moen,* 309 Or 45, 102-04, 786 P2d 111 (1990) (Fadeley, J., dissenting).

The United States Supreme Court's decision in *Penry v. Lynaugh,* 492 US 302, 109 S Ct 2934, 106 L Ed 2d 256 (1989), cast doubt on the Oregon death penalty scheme

because the Oregon statutes were primarily copied from the Texas procedure and laws that *Penry* held to be constitutionally inadequate. Thereafter, in *Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989), that court vacated an Oregon death penalty sentence, apparently because of similar inadequacy of the pre-1989 Oregon statute that provided the method whereby an Oregon jury determined the sentence to be imposed.

The pre-1989 statute was proposed by the initiative process and adopted by a popular vote in 1984. On the United States Supreme Court's remand of *Wagner v. Oregon* to this court, the majority of the Oregon Supreme Court reacted to try to "save" the initiated statute from its apparent constitutional infirmity by judicially adding a 100-word amendment to it. *See State v. Moen, supra*, 309 Or at 102-04 (dissenting opinion). I continue to dissent from the decision of the majority to make a substantial, significant, and after-the-fact addition to the 1984 statute that the people, by their vote adopting the statute, did not include.

I also dissent in this particular case on the further ground expressed by Unis, J., in his dissent that upholds the traditional rule requiring proof beyond a reasonable doubt. A death penalty case is no place to experiment with new, different, and ambiguous definitions of reasonable doubt that, in the minds of the jurors, may well reduce the level of proof required for conviction. The last sentence of the instruction, timely objected to by defendant, warned the jurors to be skeptical of whether the doubts that they might experience during deliberations were "reasonable" doubts by arguing "because everything depending on moral evidence is open to some possible * * * doubt."

**UNIS, J.,** dissenting.

Because I believe that the instruction defining reasonable doubt used in the guilt-acquittal phase of defendant's capital case violated statutory law, the Oregon Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and that such error requires reversal of all of defendant's convictions, I would remand the case to the circuit court for a new trial.

Defendant was convicted of four counts of aggravated murder, involving two women, and of other felonies, *see* 313 Or at 22, and was sentenced to death. In the guilt-acquittal phase of defendant's trial, the jury was instructed that the prosecution had the burden of proving guilt beyond a reasonable doubt. In its instruction defining reasonable doubt, the court used the phrase *"moral certainty,"* and the last sentence of that instruction stated: *"Reasonable doubt, though, is not every doubt, because everything depending upon moral evidence is open to some possible or imaginary doubt."* (Emphasis added.)

Neither the phrase "moral certainty" nor the term "moral evidence" was defined to the jury. Defendant excepted both to the last sentence of the instruction and to the use of the phrase "moral certainty" earlier in the instruction.

Defendant argues, in essence, that the use of the challenged instruction defining reasonable doubt is prejudicial error because it allowed the jury to base its verdict on moral standards or considerations (or, as the majority states, on "the perceived moral reprehensibility of defendant," 313 Or at 35, rather than on a dispassionate weighing of the evidence to determine whether the state has proved its case.[1] Defendant asserts that a reasonable juror could have interpreted the disputed instruction to permit a finding of guilt on a level of persuasion less than is required by the reasonable doubt standard under state law and the Due Process Clause of the Fourteenth Amendment to the federal constitution.

### STATUTORY AND OREGON CONSTITUTIONAL CLAIMS

I shall first consider defendant's argument based on statutory law and the Oregon Constitution. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) ("The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim."). Both Oregon statutory law and the Oregon Constitution

---

[1] "A reasonable juror might believe," defendant asserts, "that * * * [he] was guilty in a moral sense even if the state has failed to prove [his] guilt in a legal sense."

Before the trial court, defendant's lawyer asserted that, "because almost every criminal case has great immorality involved," he was "afraid a lay person, when hearing [the challenged] language, would say, 'Well, morally I know he is guilty,' whereas if you put it otherwise a juror might say, 'Well, legally I guess he is not guilty, but morally he certainly is guilty.' "

protect an accused against conviction of a crime except on proof beyond a reasonable doubt. ORS 136.415 provides that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved" and that "[i]n case of a reasonable doubt whether the guilt of the defendant is satisfactorily shown, the defendant is entitled to be acquitted." ORS 10.095(6) provides that "on all proper occasions," a trial court should instruct the jury that "in criminal cases a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established beyond reasonable doubt."

In *State v. Arenas*, 253 Or 215, 217, 453 P2d 915 (1969), this court noted that an adult charged with a crime has a right under then ORS 136.520, now ORS 136.415, "to be found guilty only if the fact finder finds beyond a reasonable doubt that the defendant committed the act charged." "[S]uch right, [although] not specifically stated in [the Oregon] [C]onstitution[,]" said the court, "is [also] one inherent in the Due Process Clause of both [the state and federal] constitutions." *Id.* In later cases, however, this court noted that the phrase "due process" does not appear in the Oregon Constitution, *State v. Clark*, 291 Or 231, 235 n 4, 630 P2d 810 (1981),[2] and that no Oregon constitutional text *expressly* requires proof beyond a reasonable doubt for a finding of guilt of a crime. *State v. Thomas*, 311 Or 182, 184, 806 P2d 689 (1991).[3]

---

[2] *See also State v. Wagner*, 305 Or 115, 145-46, 752 P2d 1136 (1988) (this court rejected the invitation to construe Article I, section 10, of the Oregon Constitution, which guarantees injured persons a remedy in due course of law, as a due process clause); *State v. Hart*, 299 Or 128, 140, 699 P2d 1113 (1985) (Article I, section 10, of the Oregon Constitution is not a "due process" clause); Linde, *Without "Due Process": Unconstitutional Law in Oregon*, 49 Or L Rev 125 (1969).

[3] I recognize that this court has stated that "[a]s a constitutional premise, the phrase 'due process' must refer to [the] federal clause and must be supported by interpretations of the clause in decisions of the United States Supreme Court or of other courts based on such decisions, since the phrase does not appear in the Oregon Constitution." *State v. Clark*, 291 Or 231, 235 n 4, 630 P2d 810 (1981). However, because in *State v. Arenas*, 253 Or 215, 217, 453 P2d 915 (1969), this court recognized that there is no express Oregon constitutional source of its holding that an adult charged with a crime has the right not to be convicted except on proof beyond a reasonable doubt, but did identify that right as part of "due process," I consider defendant's state law and due process arguments, *in the unique circumstances of this case*, to raise a state constitutional claim under Article I, section 33, of the Oregon Constitution. In so doing, I do not suggest any disagreement with this court's prior statements concerning the existence of a "due process" clause in the

Nevertheless, the right not to be convicted of a crime except on proof beyond a reasonable doubt is a right protected by Article I, section 33, of the Oregon Constitution.[4] In order to be an Article I, section 33 right, three elements must exist. First, the right must be one that no other Oregon constitutional provision affirmatively addresses. Second, the right must be shown to have been recognized at least in general terms to exist at the time Oregon became a state. Third, the right must be one that the people of Oregon's founding generation would have considered of constitutional magnitude between government and people, "that is to say, rights specifically against government and 'so rooted as to be fundamental.'" *State v. Burrow*, 293 Or 691, 713, 653 P2d 226 (1982) (Linde, J., dissenting).

Those three elements exist with respect to the right not to be convicted of a crime except on proof beyond a reasonable doubt. First, no Oregon constitutional provision affirmatively addresses that right. *State v. Thomas, supra,* 311 Or at 184. Second, it is a right that existed at the time Oregon became a state. *See id.* at 185 (right to require proof beyond a reasonable doubt for conviction of crime existed before Oregon became a territory or a state).[5] Finally, the

---

Oregon Constitution. *See supra* note 2.

[4] Article I, section 33, of the Oregon Constitution provides:

"This enumeration of rights, and privileges [in Oregon's Bill of Rights, Article I, sections 1 through 32,] shall not be construed to impair or deny others retained by the people."

[5] On August 14, 1848, the Oregon Territory was organized. Oregon was admitted as a state on February 14, 1859. Oregon Blue Book 416 (1991-92).

This court has discussed the history of the requirement of proof beyond a reasonable doubt:

"Proof beyond a reasonable doubt was uniformly required in Oregon near the time of statehood. *See* General Laws of Oregon, ch 9, § 835(5), p 356 (Deady 1845-1864) ('that in criminal cases, guilt shall be established beyond reasonable doubt'); *cf.* Statutes of Oregon [Territory] 1855, ch XXXVI, § 1, p 276 (if 'reasonable ground of doubt, in which degree of a public offence [sic]' a defendant is guilty, he can be convicted of the lower degree only)."

*State v. Thomas*, 311 Or 182, 185 n 2, 806 P2d 689 (1991). An earlier version of the Statutes of Oregon stated:

"When it appears that a defendant has committed a public offence [sic], and there is reasonable ground of doubt, in which of two or more degrees he is guilty, he can be convicted of the lowest of these degrees only."

Statutes of Oregon [Territory] 1853, ch XXXVI, § 1, p 251.

right to require proof beyond a reasonable doubt is of constitutional magnitude between government and people. It is a right that deals directly with the confrontation of government and individuals in an adversary context. In that confrontation, the prosecution's burden to prove guilt beyond a reasonable doubt represents the degree of confidence that our society thinks that a factfinder must have in the correctness of his or her factual conclusions in a criminal case. The high standard of proof is necessary to ensure against unjust convictions by giving substance to the presumption of innocence.

The prosecution's burden to prove guilt beyond a reasonable doubt "rank[s] high among those distinctions that are commonly boasted to place our system of justice above those of supposedly less enlightened nations, including some in which a defendant perhaps may be haled before a court, confronted with some modicum of incriminating evidence, and invited to persuade the tribunal that he [or she] has not committed a crime." *State v. Burrow, supra*, 293 Or at 714 (Linde, J., dissenting). "[T]he reasonable doubt instruction more than any other is central in preventing the conviction of the innocent." *People v. Brigham*, 25 Cal 3d 283, 157 Cal Rptr 905, 599 P2d 100, 104 (1979).

The reasonable doubt standard "plays a vital role in the American scheme of criminal procedure." *In re Winship*, 397 US 358, 363, 90 S Ct 1068, 25 L Ed 2d 368 (1970). In his concurring opinion in *In re Winship, supra*, 397 US at 372, Justice Harlan stated that the reasonable doubt standard is based on a "fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free."

Thus, under both Oregon statutory and constitutional law, defendant's convictions must have been based on proof beyond a reasonable doubt. The reasonable doubt instruction used in the guilt-acquittal phase of defendant's trial stated:

"The defendant is innocent unless and until the defendant is proved guilty beyond a reasonable doubt.

"The burden is upon the State to prove the guilt of the defendant beyond a reasonable doubt as to each charged offense or lesser included offense. The defendant has no burden of proof except as to an affirmative defense.

" 'Reasonable doubt' means an honest uncertainty as to the guilt of the defendant. It is based on common sense and reason. Reasonable doubt exists when, after careful and impartial consideration of all the evidence in the case, you do not feel convinced to a *moral certainty* that the defendant is guilty. Proof beyond a reasonable doubt is such as you would be willing to act upon in the most important of your own affairs. *Reasonable doubt, though, is not every doubt, because everything depending upon moral evidence is open to some possible or imaginary doubt.*" (Emphasis added.)

In construing the instruction defining reasonable doubt in this case, the question is not what this court declares the meaning of the instruction to be. Moreover, the fact that jurors could have interpreted the instruction so as to make it lawful is irrelevant, for we cannot be certain that this is what they *did* do. Rather, the standard of review in determining whether giving the instruction defining reasonable doubt was error is whether a reasonable juror could have interpreted the instruction to allow either a finding of guilt based on moral standards or considerations, rather than a dispassionate weighing of the evidence to determine guilt or innocence, or a finding of guilt on a degree of proof below that required by statutory law and the Oregon Constitution.

It appears that both the concept of "moral certainty" and the challenged language in the last sentence of the instruction, including the use of the phrase "moral evidence," was uniform by the mid-1800s as expressed by language found in Chief Justice Shaw's "beyond reasonable doubt" instruction in *Commonwealth v. Webster*, 59 Mass (5 Cush) 295, 320 (1850). Shapiro, *"To a Moral Certainty": Theories of Knowledge and Anglo-American Juries 1600-1850*, 38 Hastings LJ 153, 174-75 (1986).

The last sentence of the instruction tells the jury what is *not* a reasonable doubt. The jury was told that "[r]easonable doubt * * * is not every doubt, because everything depending upon *moral evidence* is open to some *possible* or imaginary doubt.*" (Emphasis added.) Before hearing this language, the jury was told that there are two kinds of evidence, direct evidence and circumstantial evidence, and that they could base their verdict on either direct evidence, or

circumstantial evidence, or both.[6] The jury was told what each of those types of evidence means. However, on hearing the instruction defining reasonable doubt, the jury was told that there is a third kind of evidence, moral evidence. The jury was not told what moral evidence is. Similar language — "everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt" — was included in an instruction which formed the basis for an appeal to the California Supreme Court in *People v. Brigham, supra,* 599 P2d at 104 n 9.[7] As Justice Mosk stated in his concurring opinion in that case:

"Upon hearing this a contemporary juror might well ask himself, 'What in the world is *moral* evidence? Is it different from *direct* evidence and *circumstantial* evidence? If so, how? Different in quality? In quantity? Are there three kinds of evidence: Moral, direct, circumstantial? What kind is "moral"? The dictionary synonyms are "pure, righteous, upright." The antonyms are "immoral, vicious, sinful, depraved." It simply makes no sense to speak of "pure evidence" or "righteous evidence" or "upright evidence" or "non-sinful evidence." Is the phrase just an ancient typographical error with the intended term being "mortal evidence," meaning evidence that man (transient and fallible)

---

[6] The trial judge instructed the jury in the language of what is now Uniform Criminal Jury Instruction 1019:

"There are two types of evidence. One is direct evidence — such as the testimony of an eyewitness. The other is circumstantial evidence — the proof of a chain of circumstances pointing to the existence or nonexistence of a certain fact. You may base your verdict [on] direct evidence, or circumstantial evidence, or both."

[7] The majority correctly notes that, in *People v. Brigham,* 25 Cal 3d 283, 157 Cal Rptr 905, 599 P2d 100 (1979), the California Supreme Court "held that the giving of an instruction on reasonable doubt that contained this wording was harmless, not prejudicial, in the circumstances" of that case. *See* 313 Or at 39 n 17. To reach that conclusion, however, the California court applied a standard of review in determining harmless error that is different than the standard of review this court is required to apply in determining harmless error under ORS 138.230 and Article VII (Amended), section 3, of the Oregon Constitution, and pointed to overwhelming evidence of guilt. In *People v. Brigham, supra,* the court said:

"[A] close review of the record reveals that *it is not 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'* * * * [Defendant] was convicted on two counts of robbery and one count of attempted robbery. All three counts involved the same store with one or more employees providing positive eyewitness identification of [defendant] as the robber. Under these facts, it is clear that the error in giving [the instruction defining reasonable doubt] was harmless." 599 P2d at 106 (emphasis added).

provides?' (Fns. omitted.) (Sinetar, *A Belated Look at CAL-JIC* (1968) 43 State Bar J 546, 553-554 * * *.) * * * 'A juror listening to the phrase "moral evidence" is certain to be confused.' [*Id.* at 554.]

"He [or she] is confused, of course, because the phrase 'moral evidence' has no currency in this last quarter of the 20th century. Indeed, while its meaning may have been known to legal scholars in 1850, it does not appear to have been understood by laypersons even at that time. We may so infer from the fact that in the same instructions in which Chief Justice Shaw propounded his definition of reasonable doubt, he also found it necessary to explain to the jurors at great length what he meant by 'moral evidence.' According to this explanation, 'moral evidence' was to be distinguished from 'physical evidence'; the latter served to prove external facts such as cause of death or identity of the criminal, and could be 'so decisive as to leave no doubt; as where human footprints are found on the snow, ... the conclusion is certain, that a person has passed there; because we know, by experience, that that is the mode in which such footprints are made.' (59 Mass. at p. 314.) By contrast, 'moral evidence' was said to be evidence of internal facts such as a person's intent or motive, as implied by his conduct. The latter evidence could not furnish absolute proof, for 'this intent is a secret of the heart, which can only be directly known to the searcher of all hearts ....' (*Id.* at p. 316.) Yet from his acts the person's state of mind could often be 'safely inferred' by the jurors in light of their knowledge of human nature. (*Ibid.*)

"The contemporary juror, however, knows none of all this. The phrase 'moral evidence' has passed out of the common idiom * * *." (Footnotes omitted.)

599 P2d at 107-08.

The majority recognizes that the phrase "moral evidence" is archaic, obscure, and confusing and disapproves of its use. 313 Or at 39. Searches in Lexis and Westlaw fail to disclose a single decision of this court in which the phrase "moral evidence" is used. The phrase "moral evidence" is not listed in West's Words and Phrases. In ordinary usage, " '[t]he word moral suggests a distinction between good and evil in relation to the actions or character of responsible beings.' " *People v. Brigham, supra,* 599 P2d at 112 (Mosk, J., concurring) (quoting McBaine, *Burden of Proof: Degrees of Belief,* 32 Calif L Rev 242, 258 n 35 (1944)). Given the nature

of the instruction here, a reasonable juror could have been misled and could have interpreted the use of the undefined phrase "moral evidence" to allow a verdict of guilt based on moral considerations or standards, rather than on a dispassionate weighing of the evidence, or on a degree of proof below proof beyond a reasonable doubt.

Even without the archaic, obscure, confusing, and misleading phrase "moral evidence," the last sentence of the instruction is ambiguous.

"Its message to the jury is that reasonable doubt is not a 'possible' doubt. Whether this statement helps or hinders, however, depends entirely on how each juror understands the key word 'possible.' Unfortunately the word has many meanings, and the instruction does not define it. If the juror were to take it in the sense of 'potential' — as opposed to 'actual' — the statement would perhaps be intelligible. But that is not the primary meaning of 'possible'; much more commonly it simply denotes that which can be or can become — as opposed to 'impossible.' Yet if it is so understood, the instruction again mystifies the juror; it begins by informing him [or her] that he [or she] must vote to acquit if he [or she] has a reasonable doubt, then it tells him that such a doubt is not possible."

*People v. Brigham, supra*, 599 P2d at 109 (Mosk, J., concurring). Conversely, a reasonable juror could believe that a doubt which is only "possible" is also not a reasonable one.

This court has no way of knowing which of the various meanings of the word "possible" the jurors applied in reaching their guilty verdict in this case.

As previously stated, defendant also objected to the use of the phrase "moral certainty" in the instruction defining reasonable doubt. Historically, the insertion of the concept of moral certainty in the reasonable doubt instruction "reflected the desire to make legal language consistent with the philosophical terminology of the day." Shapiro, *supra*, at 175. In the mid-1800s, the terminology "moral certainty" "was part of the language and discourse of the educated classes in both England and America." *Id.* "Moral certainty" was a widely used concept that was found in moral, theological, historical, and philosophical, as well as legal, discourse. *Id.*

In his instruction to the jury in *Commonwealth v. Webster, supra*, Chief Justice Shaw attempted to define "moral certainty" as "a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it." 59 Mass at 320. Both the phrase "moral certainty" and Chief Justice Shaw's attempted definition of that phrase have been acutely criticized. *See, e.g.*, 9 Wigmore, Evidence § 2497 (Chadbourn rev 1981); *People v. Brigham, supra*, 599 P2d at 107-20 (Mosk, J., concurring). One commentator who has examined the intellectual history of the phrase "moral certainty" has concluded that the phrase does not convey to contemporary jurors what it was intended to convey when it was introduced and that the history of that phrase suggests that it ought to be dropped. Shapiro, *supra*, at 154.[8]

This court has upheld the use of the phrase "moral certainty" in an instruction defining reasonable doubt. *See, e.g., State v. Robinson*, 235 Or 524, 385 P2d 754 (1963). However, I agree with language in the recent decision of the Supreme Court of the United States in *Cage v. Louisiana*, 498 US 39, 111 S Ct 328, 330, 112 L Ed 2d 339, 342 (1990), that suggests that the use of the phrase "moral certainty" is to be avoided. In *Cage*, the Supreme Court rejected a state court's effort to explain the concept of reasonable doubt. A jury instruction that defined "reasonable doubt" as "an actual substantial doubt" and one that "would give rise to a grave uncertainty," and that told the jury that "[w]hat is required is not an absolute or mathematical certainty, but a moral certainty," violated the Due Process Clause of the United States Constitution as interpreted in *In re Winship, supra*, 397 US at 364. The common understanding of "substantial" and "grave," the Supreme Court said, "suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Cage v. Louisiana, supra*, 111 S Ct at 329-30. "*When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary*

---

[8] In rejecting the California formulation of "reasonable doubt," which includes the phrase "moral certainty" and the language in the last sentence of the instruction given in this case, the Comments to the Model Penal Code state: "No effort is made to define 'reasonable doubt,' in the view that definition can add nothing helpful to the phrase." American Law Institute: Model Penal Code, Tent Draft No. 4, § 1.13, p 109 (1955).

*certainty,* it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.* at 330. (Emphasis added.) Accordingly, the Supreme Court reversed the state court decision upholding the instruction. *Id.*[9]

This review of the deficiencies in the challenged language in the last sentence of the instruction and the use of the phrase "moral certainty" illuminates why the inclusion of the challenged language in the instruction defining reasonable doubt does not comport with statutory law and the Oregon Constitution. When the language of the last sentence of the instruction, which includes the use of the undefined phrase "moral evidence," is considered with the reference to the undefined term "moral certainty," "*rather than evidentiary certainty,*" *see Cage v. Louisiana, supra,* 111 S Ct at 330 (emphasis added), a reasonable juror could have interpreted the instruction to find defendant guilty either on moral standards or considerations rather than evidentiary certainty, or on a threshold of proof lower than proof beyond a reasonable doubt. Viewing the instruction defining reasonable doubt as a whole, several confusing and misleading components cannot combine to make a clear and satisfactory instruction. Thus, the instruction violated statutory law and the Oregon Constitution.

Having determined that giving the instruction defining reasonable doubt was error, the next inquiry is to determine whether the instructional error requires reversal of all of defendant's convictions.

ORS 138.230 provides:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or

---

[9] *See State v. Manning,* 409 SE2d 372 (SC 1991), *cert den* ____ US ____, 112 S Ct 1282, 117 L Ed 2d 507 (1992) (murder conviction reversed; trial judge's instruction on reasonable doubt, which referred to a "moral certainty" and to "a doubt for which you can give real reason," was so confusing that a reasonable juror could have interpreted the charge as a whole to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause of the Fourteenth Amendment to the federal constitution).

exceptions which do not affect the substantial rights of the parties.''

This court has stated that a substantial right of a party is not affected if there is (1) ''substantial and convincing evidence of guilt'' and (2) ''little, if any, likelihood that the error affected the verdict.'' *State v. Miller*, 300 Or 203, 220-21, 709 P2d 225 (1985). This test of when a substantial right of a party is affected is consistent with the standard for reversible error set forth in Article VII (Amended), section 3, of the Oregon Constitution. Error is harmless under Article VII (Amended), section 3, of the Oregon Constitution, if there is ''(1) substantial and convincing evidence of guilt in a criminal case, and (2) little, if any likelihood that the error affected the verdict.'' *State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991) (quoting *State v. Isom*, 306 Or 587, 595-96, 761 P2d 524 (1988)). In *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987), this court declared that both criteria of the test of when a substantial right of a party is affected are fully expressed by the second criterion.[10] The issue, then, is whether there is ''little likelihood'' that the erroneous instruction defining reasonable doubt ''affected the verdict.''

The question whether defendant has been convicted on inadequate evidence is central to the basic question of guilt or innocence. Defendant has the right to require the state to persuade the trier of fact of his guilt of the crime(s) charged by ''proof beyond a reasonable doubt.'' The instruction is an error that skews the framework and the entire conduct of the trial and defies meaningful appellate harmless error analysis. We can never know with any certainty whether the erroneous instruction caused inaccuracy in the guilt determination by the jury. To condone such an error is an affront to the notion of justice and renders the trial fundamentally unfair. To

---

[10] In *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987), this court said:

''Although this court has in the past analyzed these two criteria separately, *see, e.g., State v. Van Hooser*, 266 Or 19, 25-27, 511 P2d 359 (1973), there is no justification for doing so, because it is apparent that the constitutional and statutory standards are fully expressed by the second criterion. Whether there was substantial and convincing evidence of guilt is not the issue; the issue is whether the error was likely to have affected the result. Of course, the less substantial the evidence of guilt, the more likely it is that an error affected the result, but that is an additional reason not to bifurcate the standard so as to require two independent inquiries.''

condone such an inaccurate, misleading, and confusing instruction as to the meaning of reasonable doubt denigrates the vital role that the standard "proof beyond a reasonable doubt" plays in our criminal justice adversary system. The reasonable doubt instruction provides the yardstick by which the jury in a criminal case measures the evidence to determine guilt or innocence. If the yardstick is inaccurate, misleading, or confusing, it is utterly impossible to determine whether the jury found guilt on a proper measurement.

In sum, the instruction at issue here could have been interpreted by the jury to allow its verdict to rest on an improper basis, *i.e.*, moral standards or considerations, rather than on evidentiary certainty. The deficient instruction permitted the jury to use an inappropriate burden of persuasion. The likelihood of misunderstanding and misapplication by the jury was substantial. This is particularly so because in the guilt-acquittal phase of an aggravated murder trial, it takes only one unconvinced juror to prevent a finding of guilt.[11]

Because there is more than a "little likelihood" that the erroneous instruction defining reasonable doubt "affected the verdict," the instruction violated statutory law and the Oregon Constitution, and is harmful, prejudicial error.

## FEDERAL FOURTEENTH AMENDMENT DUE PROCESS CLAIM

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged." *In re Winship, supra,* 397 US at 364, *quoted with approval in Cage v. Louisiana, supra,* 111 S Ct at 329. This fundamental principle prohibits the state from using an instruction defining reasonable doubt that has the effect of allowing a finding of guilt on a degree of proof less than proof beyond a reasonable doubt.

---

[11] A first degree murder charge requires a unanimous verdict of guilty for conviction. Or Const, Art I, § 11.

In construing the instruction defining reasonable doubt given to the jury in this case, the question is not what a court declares the meaning of the instruction to be. *Francis v. Franklin*, 471 US 307, 315, 105 S Ct 1965, 85 L Ed 2d 344 (1985). Moreover, the fact that jurors could have interpreted the instruction so as to make it lawful is irrelevant, for "we cannot be certain that this is what they *did* do." *Sandstrom v. Montana*, 442 US 510, 526, 99 S Ct 2450, 61 L Ed 2d 39 (1979) (emphasis in original). Rather, the standard of review in determining whether this is a federal constitutional error is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the constitution." *Estelle v. McGuire*, ____ US ____, 112 S Ct 475, 482, 116 L Ed 2d 385 (1991) (quoting *Boyde v. California*, 494 US 370, 380, 110 S Ct 1190, 108 L Ed 2d 316 (1990)).[12] Applying that standard of review, I believe that there is a reasonable likelihood that the jury in this case applied the disputed language in the instruction to allow a finding of guilt on a degree of proof below that required by the Due Process Clause of the federal constitution. As previously stated, when the language of the last sentence of the instruction defining reasonable doubt, which includes the use of the undefined term "moral evidence," is considered with reference to the undefined term "moral certainty," rather than "evidentiary certainty," it is reasonably likely that a juror interpreted the instruction to find defendant guilty either on moral standards or considerations rather than evidentiary certainty, or on a threshold of proof lower than proof beyond a reasonable doubt. Thus, the instruction, taken as a whole, violated the Due Process Clause of the federal constitution.

The next inquiry, then, is whether the federal constitutionally erroneous instruction defining reasonable doubt

---

[12] In *Estelle v. McGuire*, ____ US ____, 112 S Ct 475, 482 n 4, 116 L Ed 2d 385 (1991), the Supreme Court of the United States acknowledged that, in cases decided after *Boyde v. California*, 494 US 370, 380, 110 S Ct 1190, 108 L Ed 2d 316 (1990), it had used different phrasing to describe the standard of review for jury instructions. *See, e.g., Cage v. Louisiana*, 498 US 39, 111 S Ct 328, 329, 112 L Ed 2d 339 (1990) ("In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole"); *Yates v. Evatt*, 500 US ____, 111 S Ct 1884, 1892, 114 L Ed 2d 432 (1991) ("We think a reasonable juror would have understood the [instruction] to mean ..."). To "speak with one voice on this issue," the Supreme Court, in *Estelle v. McGuire, supra*, 112 S Ct at 482 n 4, rejected standards that required examination of what a reasonable juror either "could" have done or "would" have done, and reaffirmed the standard set out in *Boyde v. California, supra*, 494 US at 380.

used in the guilt-acquittal phase of defendant's capital case requires reversal or is merely harmless error.

"Whether a conviction for crime should stand when a [s]tate has failed to accord federal constitutionally guaranteed rights is * * * a federal question." *Chapman v. California*, 386 US 18, 21, 87 S Ct 824, 17 L Ed 2d 705 (1967). "Trial errors" are subject to harmless error analysis. *Arizona v. Fulminante*, ___ US ___, 111 S Ct 1246, 1264, 113 L Ed 2d 302 (1991).[13] "Structural errors" ("structural defects in the constitution of the trial mechanism"), on the other hand, require automatic reversal. *Id.*, 111 S Ct at 1265.[14]

A "trial error" is one that "occur[s] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [the error] was harmless beyond a reasonable doubt." *Id.*, 111 S Ct at 1264. A "structural error," by contrast, is not subject to the harmless error analysis primarily because "[t]he entire conduct of the trial from beginning to end is obviously affected." *Id.*, 111 S Ct at 1265. With "structural errors," the trial court "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id.* (quoting *Rose v. Clark*, 478 US 570, 577-78, 106 S Ct 3101, 92 L Ed 2d 460 (1986)). "[A] trial error seems to be one for which we can sometimes know for sure whether it has caused inaccuracy in the trial outcome, and a structural error seems to be one for which we can never know with any certainty." Ogletree, *Arizona v. Fulminante: The Harm of Applying Harmless Error to Coerced Confessions*, 105 Harv L Rev 152, 162 (1991).

Examples of structural errors include the denial of the right to counsel at trial, the denial of the right to a trial conducted by an impartial judge, the denial of the right to self-representation, the unlawful exclusion of members of the defendant's race from the grand jury, and the denial of the

---

[13] A federal constitutional "harmless error" is simply an error that, beyond a reasonable doubt, has not contributed to the determination of guilt. *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967) (recently reconfirmed as the proper test in *Yates v. Evatt, supra* note 12, at 1892.)

[14] This distinction was developed after the Supreme Court's decision in *Cage v. Louisiana, supra*, note 12.

right to a public trial. *Arizona v. Fulminante, supra,* 111 S Ct at 1265. In *Jackson v. Virginia,* 443 US 307, 320 n 14, 99 S Ct 2781, 61 L Ed 2d 560 (1979), the Supreme Court stated that its cases have indicated that "failure to instruct a jury on the necessity of proof of guilt beyond a reasonable doubt can never be harmless error."

Applying the *Fulminante* distinction to those errors subject to harmless error analysis (trial errors) and those errors subject to automatic reversal (structural errors), the jury instruction at issue in this case that allowed the jury to make a finding of guilt on less persuasion than is required by the reasonable doubt standard mandated by the federal constitution is a structural error that calls for automatic reversal. This is so for the same reasons that I stated in my discussion of whether, under statutory law and the Oregon Constitution, the instructional error requires reversal. *See ante,* 313 Or at 56-57. It is a constitutional deprivation that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. It is an error that defies harmless error analysis. Without the basic protection of the right not to be convicted of a crime except on proof beyond a reasonable doubt, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Arizona v. Fulminante, supra,* 111 S Ct at 1265 (quoting *Rose v. Clark, supra,* 478 US at 577-78).

Even if the trial court's deficient instruction as to the meaning of reasonable doubt were to be treated as a "trial error" and thereby subject to harmless error analysis, the deficient instruction may not be excused as harmless error, and reversal is required. In *Yates v. Evatt,* 500 US ___, 111 S Ct 1884, 114 L Ed 2d 432 (1991), the Supreme Court endeavored to clarify the standard of review in testing unconstitutional burden-shifting presumptions in a criminal case for harmlessness. To be considered harmless beyond a reasonable doubt, as *Chapman v. California, supra,* 386 US at 24, requires, the *Yates* court declared that a reviewing court must be satisfied beyond a reasonable doubt that the effect of the erroneous instruction, as compared to that of the evidence, was so minimal or unimportant that it did not contribute to the verdict obtained. *Yates v. Evatt, supra,* 111 S Ct at 1892.

To make that determination, two inquiries are required. First, the reviewing court must determine what evidence the jury actually considered in reaching its verdict. *Id.* at 1893. This calls for an objective rather than a subjective determination, so it must be made by examining the instructions given the jury. *Id.* Next, the reviewing court must make a judgment about the significance of the instruction to reasonable jurors, when measured against what the jury actually considered independently of the instruction in reaching its verdict. *Id.* Again, subjective inquiry is impossible; therefore, the question must be "whether the force of the evidence presumably considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [instruction]." *Id.* "It is only when the effect of the [deficient instruction] is comparatively minimal to this degree that it can be said * * * that the [instruction] did not contribute to the verdict." *Id.* at 1894. The oft-stated rule "that the harmlessness of an error is to be judged after a review of the entire record" is applicable only if it can be safely assumed that the jury considered everything in the record. *Id.* at 1893-94.

Applying the *Yates* standard and viewing the instruction defining reasonable doubt as a whole, I find the deficient instruction defining reasonable doubt not harmless. The majority's review of the facts, even in the light most favorable to the state, demonstrates that this case is close on the facts. Stated differently, although the commission of a crime may be proved solely by circumstantial evidence, the state's case, which is based entirely on circumstantial evidence, is not so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the erroneous instruction defining reasonable doubt. The instruction at issue here conveyed to the jury that it may base its verdict on an improper basis, *i.e.*, moral considerations or standards, or, to put the point differently, the deficient instruction permitted the jury to use a lesser burden of proof than proof beyond a reasonable doubt. The force of the evidence presumably considered by the jury in accordance with the trial court's instruction is not "so overwhelming [in this case] as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have

been the same in the absence of the [deficient instruction]." This is particularly so because, as previously stated,[15] in the guilt-acquittal phase of an aggravated murder trial, it takes only one unconvinced juror to prevent a finding of guilt.[16]

For the foregoing reasons, I respectfully dissent. Peterson, J., joins in this dissenting opinion in part. Fadeley, J., joins in this dissenting opinion.

---

[15] *See supra* note 11.

[16] The instruction defining reasonable doubt given in this case also stated that "[p]roof beyond a reasonable doubt is such as you would be willing to act upon in the most important of your own affairs." In *Holland v. United States*, 348 US 121, 140, 75 S Ct 127, 99 L Ed 150 (1954), the Supreme Court of the United States was presented with a jury instruction that defined reasonable doubt as "the kind of doubt * * * which you folks in the more serious and important affairs of your own lives might be willing to act upon." The Supreme Court stated that "this section of the [instruction] should have been in terms of the kind of doubt that would make a person hesitate to act * * * rather than the kind on which he is willing to act." *Id.* The Ninth Circuit Court of Appeals has made it clear that it "prefer[s] *Holland's* 'hesitate to act' formulation to an instruction requiring proof 'such as you would be willing to act upon in the most important and vital matters relating to your own affairs.' " *United States v. Jaramillo-Suarez*, 950 F2d 1378, 1386 (9th Cir 1991). *See also United States v. Robinson*, 546 F2d 309, 313 (9th Cir 1976) (original statement of this preference).