Argued and submitted June 6, defendant's convictions on two counts of aggravated murder affirmed; sentence of death vacated and remanded to the trial court for further proceedings October 4, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID LYNN SIMONSEN,
*Appellant.*

## (TC 88CR1816; SC S36085)

798 P2d 241

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause and filed the brief on behalf of appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause and filed the brief on behalf of respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

Fadeley, J., specially concurred and filed an opinion.

## GILLETTE, J.

This criminal case is before us on automatic review of defendant's two convictions for aggravated murder and sentence of death. ORS 163.150. Because defendant pleaded guilty to both counts of aggravated murder, the only issues before us concern the penalty phase of the proceedings. We hold that the penalty phase was erroneously conducted and, therefore, vacate defendant's sentence of death and remand the case for further proceedings.

On September 3, 1988, the bodies of two women were found in a remote area near Coquille. The women, who had been dead for two or three days, were both nude from the waist down. They had been tied together at the wrists and shot in the head from close range with a shotgun. Police found a great deal of physical evidence at the scene, including tire tracks of a small car or truck.

Investigators eventually determined that the two victims were from West Germany. The key break in the case came a week after the bodies were discovered, when two witnesses separately came forward to report that defendant had said that he and a man named Jeff Williams had been involved in shooting two women with a sawed-off shotgun. On September 11, police arrested defendant. After being advised of his rights, he gave two statements confessing that he and Williams had abducted, raped, and murdered the women. As a result of defendant's confessions, investigators eventually recovered significant evidence, including the suspect vehicle and the murder weapon.

After being charged with two counts of aggravated murder, defendant pleaded guilty. The trial court conducted a penalty phase proceeding. A jury affirmatively answered the penalty phase questions put to it, and the court sentenced defendant to death.

## I

■ Defendant first argues that his penalty phase hearing was flawed because the trial court failed to instruct the jury concerning what has come to be called the "fourth question" in death penalty proceedings. Such a question permits a jury to spare a defendant from the death penalty even though the

evidence requires a "yes" answer to the three special disposi-
tional questions set out in *former* ORS 163.150(1).[1] *See gener-
ally, State v. Wagner,* 309 Or 5, 14-20, 786 P2d 93 (1990)
*(Wagner II)* (setting out reasons that a "fourth question," in
addition to the three specifically provided in *former* ORS
163.150, must be given). As the state recognizes in its brief,
this argument is well taken. The "fourth question" was not
submitted to the jury. The penalty phase hearing was, there-
fore, constitutionally flawed. A new proceeding is required.
*Id.; State v. Moen,* 309 Or 45, 786 P2d 111 (1990); *State v.
Miranda,* 309 Or 121, 786 P2d 155 (1990); *State v. Farrar,* 309
Or 132, 786 P2d 161 (1990). The case must be remanded for a
new penalty proceeding or, at the prosecutor's election, entry
of life sentences.

## II

■     Defendant next argues that the trial court erred in
refusing to give the following jury instruction:

> "If you do not sentence defendant to death, you are to
> presume that if the defendant is sentenced to life imprison-
> ment, he will not be released from prison."[2]

Defendant purported to derive this requested instruction from

---

[1] *Former* ORS 163.150(1) (which has been amended in particulars not pertinent to
our consideration of this case) provided:

"(b) Upon the conclusion of the presentation of the evidence, the court shall
submit the following issues to the jury:

"(A) Whether the conduct of the defendant that caused the death of the
deceased was committed deliberately and with the reasonable expectation that
death of the deceased or another would result;

"(B) Whether there is a probability that the defendant would commit crimi-
nal acts of violence that would constitute a continuing threat to society. In
determining this issue, the court shall instruct the jury to consider any mitigating
circumstances offered in evidence, including, but not limited to, the defendant's
age, the extent and severity of the defendant's prior criminal conduct and the
extent of the mental and emotional pressure under which the defendant was
acting at the time the offense was committed; and

"(C) If raised by the evidence, whether the conduct of the defendant in
killing the deceased was unreasonable in response to the provocation, if any, by
the deceased."

In fact, only questions (A) and (B) were submitted to the jury in this case. There is
no claim that any evidence required that question (C) also be submitted to the jury.

[2] Under *former* ORS 163.150(1)(e), in effect at the time of defendant's trial in this
case, a "no" answer to one of the three special penalty phase questions meant that the
defendant would be sentenced automatically to life imprisonment.

this court's decision in *State v. Leland,* 190 Or 598, 227 P2d 785 (1951), *aff'd sub nom Leland v. Oregon,* 343 US 790, 72 S Ct 1002, 96 L Ed 1302 (1952), a death penalty case decided under an earlier statute.

In *Leland,* a prospective juror was concerned about whether life imprisonment of the defendant really would mean life imprisonment. The trial judge told the juror that, should the jury return a verdict of life imprisonment,

> "then the imprisonment would be for life, and that is the law. As a practical matter, how long he would serve I have no idea, nor do you. That would be up to the Board of Probation and Parole * * *."

*Id.* at 619. On appeal, this court held that it was error to apprise the jury that there was a possibility that the defendant could be paroled if he were sentenced to life imprisonment:

> "In fixing the penalty in a first degree murder case, the jury's choice is between capital punishment and a sentence of life imprisonment. The possibility of pardon or parole, purely speculative, should not enter into the jury's deliberations, and was irrelevant on the voir dire examination. We, therefore, agree * * * that it was improper for the court to make the statement that it did in this regard, and also improper for the assistant district attorney afterwards to call attention to the court's statement. We are not convinced, however, that the incident resulted in any prejudice to the defendant. * * * It should be remembered that the statements complained of were made while the jury was being selected and some eleven days before the case was finally submitted. In the instructions the court told the jury that if it brought in a verdict of murder in the first degree, with a recommendation of life imprisonment, 'this recommendation is mandatory and imposes compulsory action on the court. In such event the penalty is imprisonment for life, and you shall assume life imprisonment means imprisonment for life.' This was the last word that the jury heard upon the question from the court."

*Id.* at 623.

When read in context, it is clear that the instruction that this court mentioned approvingly in *Leland* was not treated as a necessary instruction in all cases. Rather, it was deemed to have helped cure an error that the trial court had made earlier in that case. There is no suggestion in *Leland* that this court would have required the instruction in question

or, indeed, even would have permitted it, in the absence of the earlier error. The trial court did not err in refusing to give the requested instruction in this case.

Moreover, the instruction would not have been a correct statement of the law. Under *former* ORS 163.150(1)(e) and 163.105, a life sentence for aggravated murder did not disqualify a defendant from later being considered for parole. Because the instruction was not a correct statement of the law, the trial court did not err in refusing to give it.

## III

Finally, defendant mounts a series of facial constitutional challenges to Oregon's statutory and constitutional death penalty process. This court already answered all of defendant's arguments in this respect in *Wagner II, supra; State v. Moen, supra; State v. Miranda, supra; State v. Farrar, supra;* and *State v. Montez,* 309 Or 564, 789 P2d 1352 (1990). We perceive no purpose to be served by reiterating defendant's contentions and this court's answers to them. None of defendant's arguments under this assignment of error is well taken, beyond defendant's claim that the Oregon statutory scheme is unconstitutional for failing to permit the jury to be asked a "fourth question" regarding the effect of mitigating evidence concerning defendant. We already have held that assignment of error is well taken.

## CONCLUSION

Defendant's convictions on two counts of aggravated murder are affirmed. Defendant's sentence of death is vacated, and the case is remanded to the trial court for further proceedings.

**FADELEY, J.,** specially concurring.

I concur in the result but wish to make two points concerning approval of that result. First, I think it wise that this court, the people, and the legislature keep in view the reason why this case is reversed and remanded. Second, I do not agree that the discussion approving the jury instruction given is clearly cast in the appropriate focus.

To the first point, we should be mindful that the United States Supreme Court has vacated the judgment and remanded the case to this court. *Wagner v. Oregon,* 492 US

914, 109 S Ct 3235, 106 L Ed 2d 583 (1989).[1] That action may have been based on the inadequacy of the second question under Oregon's initiated death penalty statutes. The jury was simply asked whether the homicide was sufficiently deliberate and whether the defendant was probably dangerous in the future. No question was asked which permitted the jury to express its opinion about whether the death penalty was appropriate.

To the second point — involving the jury instruction about what the punishment would be if the jury answered the two questions in the affirmative — I presently believe that the Oregon death penalty statutes, including their present form as amended by the 1989 legislature or this court in *State v. Wagner (Wagner II),* 309 Or 5, 786 P2d 93 (1990), are properly classified with those state statutes granting the jury the power to make the life or death determination. That is, the jury imposes death, not the sentencing judge. The statute leaves no discretion and is mandatory. But the questions asked of the jury, absent an explicit instruction to that effect, do not apprise the jury that it has the power to determine the sentence of either death or life imprisonment. The reasoning under which the judgment in *Wagner v. Oregon, supra,* was vacated by the Supreme Court, in my understanding of that reasoning, requires that the jury be directly apprised of its power to choose and also of the effect of the answers it gives to the questions asked. It is true that the fourth question, amended into the statute, may lead the jury to infer, on retrial, that jurors have that responsibility and authority in Oregon. But, I would not leave the question to an inference, especially not when the remedy is easily available. In my view, there is substantial value in telling it like it is and significant vice in pussy-footing about on the subject.

---

[1] News from the Court too recent to cite indicates that Court rebuffed Oregon's effort to modify that Court's ruling in *Wagner v. Oregon.*