Argued and submitted May 12; resubmitted August 8, sentence of death vacated and case remanded to the circuit court for further sentencing proceedings August 11, 1994

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID LYNN SIMONSEN,
*Appellant.*

(CC 88-CR-1816; SC S38966)

878 P2d 409

Phillip M. Margolin, Portland, argued the cause for appellant. Beecher C. Ellison, Grants Pass, filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Brenda JP Rocklin and Kaye E. Sunderland, Assistant Attorneys General, Salem.

FADELEY, J.

## FADELEY, J.

In this aggravated murder case, the issue is whether the government obtained evidence from defendant in violation of the state constitutional provision against self-incrimination.[1] We hold that it did and, therefore, reverse a death penalty imposed as a result of a penalty-phase proceeding in which that evidence was utilized.

The Oregon Constitution, Article I, section 12, provides in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

The evidence in question was obtained by interrogating defendant without informing him of the fact that he had a court-appointed lawyer or the fact that the lawyer had asked to consult with defendant before further interrogation took place. Substantial evidence that was before the jury in the penalty-phase proceeding was obtained after the lawyer made that request. Defendant's motion to suppress, based on the above constitutional objection, was denied. If the evidence should have been suppressed, defendant is constitutionally entitled to have his sentence vacated under our prior decisions.

Defendant, who had been arrested in Jackson County for aggravated murder, was transported to Coos County, arriving in the evening. A sheriff's detective removed defendant from the Coos County jail around 9 a.m. the next morning.[2] When his court-appointed lawyer arrived at the Coos County jail to consult with him shortly thereafter, defendant was gone. On learning that defendant had been removed from the jail by the detective, defendant's counsel demanded at the sheriff's office that all questioning of defendant cease until counsel and defendant were permitted to consult.

---

[1] Defendant was convicted after pleading guilty to two counts of aggravated murder. For the facts concerning the homicides, *see State v. Simonsen*, 310 Or 412, 798 P2d 241 (1990) (affirming convictions for aggravated murder and remanding case for new sentencing proceeding).

[2] The defendant was advised of his *Miranda* rights both at arrest and again the next morning. There is no issue in this case concerning such warnings.

The detective and another deputy sheriff transported defendant to a remote, wooded location near the scene of the crime. The detective who transported defendant turned off his police radio. When two other deputies who were to assist in the interrogation arrived in a separate vehicle, the sheriff's dispatcher called in on their radio, asking to talk to the interrogating detective. The detective, who was in charge at the scene, instructed the newly arrived deputies to turn off their two-way radio also and not to return the call from the dispatcher.

That radio call was from the dispatcher trying to tell the interrogators about defendant's lawyer, who was demanding to see and interview his client and to have questioning of defendant cease until that occurred. Thereafter, defendant made significantly incriminating statements on videotape. During that time, defendant's lawyer continued his attempts to contact defendant.

The consultation that defendant's lawyer sought with defendant was to be the first interview between them. Defendant did not know, at the time that he made the incriminating statements, that he had a lawyer. On the other hand, responsible officers at the sheriff's office and jail knew that the lawyer was available, was seeking the opportunity to consult with defendant, and was demanding that the consultation take place before any further questioning occurred.

Defendant moved to suppress the videotaped evidence. At the hearing on that motion, the detective who had taken physical custody of defendant stated that his reason for turning off his two-way radio, and for requiring another deputy to turn off his separate radio, was that the business on which he then was engaged was more important than any conceivable communication that he might receive by radio.[3] He testified that he turned the radios off to prevent any interference with his interrogation and videotaping. The trial court denied the motion to suppress, because the detective interrogating defendant had not been told personally about the lawyer or his requests.

---

[3] The detective also testified that he feared that the call was from a member of the press with whom he did not wish to speak.

■■ This court previously has announced the law that applies under the circumstances of this case. Those circumstances are as follows. Defendant was in custody and charged with a specific crime when the interrogation in question commenced. A specific lawyer had invoked defendant's right to remain silent until after a consultation had taken place. Defendant had a right to have that invocation by his lawyer of his right to remain silent honored, at least until he was able to consult with the lawyer or, in the alternative, he waived his right to such a consultation after being fully apprised of the situation that actually existed.

The police knew about the lawyer and his demand that interrogation cease. That knowledge never was imparted to defendant, however. Under those circumstances, the state has not shown, as it is required to do, that defendant knowingly, intelligently, and voluntarily waived his right against self-incrimination when, during custodial interrogation, he made the videotaped statement that the trial court declined to suppress.

In *State v. Haynes*, 288 Or 59, 602 P2d 272 (1979), *cert den* 466 US 945 (1980), the defendant was arrested for homicide and advised of his *Miranda* rights. That night, the defendant implicated himself in the murder. Early the next morning, defendant identified the murder weapon. At about the same time that defendant identified the murder weapon, the defendant's wife attempted to retain a lawyer for the defendant. She retained a lawyer several hours later. The lawyer called the Springfield police station and attempted to arrange access to the defendant but was told repeatedly that defendant was not there and that no arrest had been made. After checking with other police stations, the lawyer again checked with Springfield police headquarters, where holding cells were located, and was told that the defendant was there. The lawyer notified police that he was coming to the station to interview the defendant. When he arrived, he found that the defendant had been removed from the Springfield station and taken for a drive. During the drive, the defendant disclosed additional details about the homicide. The defendant later was videotaped in a reenactment of the crime.

In *Haynes*, this court suppressed the defendant's statements and the videotape, holding:

> "[A] suspect who has previously been told in general terms of his right to counsel and has waived this right must be informed when counsel actually seeks to consult with him and must voluntarily and intelligently have rejected that opportunity, before further statements may thereafter be taken from him and used against him." 288 Or at 61.[4]

The court explained its holding:

> "[W]hen law enforcement officers have failed to admit counsel to a person in custody or to inform the person of the attorney's efforts to reach him, they cannot thereafter rely on defendant's 'waiver' for the use of his subsequent uncounseled statements or resulting evidence against him. We believe this rule protects the suspect's right under [A]rticle I, section 12 [of the Oregon Constitution], and the federal fifth and 14th amendments not to testify against himself, and also that it suffices to satisfy the statement quoted by defendant from *Miranda v. Arizona*, [384 US 436, 86 S Ct 1602, 16 L Ed 2nd 694 (1966)], that police interference with consultations between defendant and an attorney 'constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake.' 384 US at 465, n. 35." *Id.* at 73-74 (footnote omitted).

This court also held:

> "We hold only that when unknown to the person in this situation an identified attorney is actually available and seeking an opportunity to consult with him, and the police do not inform him of that fact, any statement or the fruits of any statement obtained after the police themselves know of the attorney's efforts to reach the arrested person cannot be rendered admissible on the theory that the person knowingly and intelligently waived counsel.

---

[4] After the *Haynes* case, in a closely related situation, this court commented in *State v. Sparklin*, 296 Or 85, 93, 672 P2d 1182 (1983), that:

> "Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. No waiver of that right may occur until defendant has consulted with his attorney. * * * A defendant may, of course, volunteer statements, but this must be on his own initiative and not in response to questioning."

"*  *  *  *  *

"*  *  * [T]he issue of a suspect's access to counsel enters cases like the present as an aspect of his right to answer questions or provide incriminating testimony only voluntarily. Or Const Art I, § 12, US Const, amend V. * * * Thus it is not a generalized right to counsel that the decisions we have quoted enforce but, more concretely, the derivative right to the benefit of counsel's efforts to forestall involuntary and incriminating disclosures." *Id.* at 70-71.

In a case closely related to the present case, *State v. Isom*, 306 Or 587, 592, 761 P2d 524 (1988), this court stated:

"Article I, section 12, of the Oregon Constitution provides, in part: 'No person shall * * * be compelled in any criminal prosecution to testify against himself.' In *State v. Kell*, 303 Or 89, 94-95, 734 P2d 334 (1987), we interpreted Article I, section 12, as it pertained to uncounseled out-of-court statements by a criminal defendant. * * * [This court] unanimously agreed, 'Miranda questions aside, once a suspect in custody unequivocally requests to talk to a lawyer, that request must be granted and questioning should cease.' "[5]

This court stated further:

"Also in 1979, in *State v. Haynes*, 288 Or 59, 602 P2d 272 (1979), we held that the prosecution could not use against a defendant statements obtained from him while in police custody after the police, but not the defendant, knew that a lawyer sought to consult with the defendant at the instigation of the defendant's wife. There we held that the defendant's statements must be suppressed even though the defendant himself had not sought to stop questioning to consult with a lawyer." *Id.* at 593.

In the present case, the state attempts to avoid the weight of this court's decision in *Haynes* and the other

---

[5] The *Isom* court also said:

"We are aware that the admonition from *Kell*, quoted [in the text] above, came after the conduct of the police officers in the case at bar, but the admonition was not new. We now add to the admonition this flat rule: Upon request for counsel, questioning not only 'should' but must cease.

"In the case before us, the interrogating officers blithely ignored defendant's request for a lawyer in the hope of obtaining statements from him * * *. The acts of the police officers were a violation of our earlier holdings, as embodied in the specific admonition of this court in *Kell*." 306 Or at 593.

foregoing decisions by arguing that the interrogating detective did not know that a lawyer was available to defendant, was asking to consult with him, and had demanded that any interrogation cease until after that consultation. The state does concede that, at the time the appointed defense counsel invoked defendant's right to remain silent, the interrogating detective, the other officer who turned off his radio, the sergeant contacted by defendant's counsel, and the radio dispatcher who attempted to relay defense counsel's request were all members of the same police agency.

The state's argument raises the question whether the kind of request made by defense counsel in this case, when made to any responsible individual within a police agency, is sufficient to invoke a defendant's rights under Article I, section 12, as explained in *Haynes*, or whether, instead, counsel's request must actually reach the person who has a defendant in his or her physical custody and who actually conducts the interrogation.

■ It is not uncommon to impute a particular police officer's knowledge of a fact to other members of the same police force. In the most common situation, police are benefited by that imputation of knowledge. *See, e.g., State v. Pratt*, 309 Or 205, 216-17, 785 P2d 350 (1990) (officers allowed to rely on information in hands of other officers), *appeal after remand*, 316 Or 561, 853 P2d 827, *cert den* ___ US ___, 114 S Ct 452, 126 L Ed 2d 384 (1993). But that rule of imputation of knowledge applies without regard to which party benefits from it. We hold that a lawyer's request to a responsible officer of a police organization that any questioning of the lawyer's client cease must be honored promptly by that organization, whether or not one or more members of the organization individually are ignorant of the fact or nature of the request.

Because the state's assertion about the individual interrogating officer's lack of personal knowledge is insufficient to avoid the rule in *Haynes*, we turn to the application of that rule in the circumstances of the case. As already described, it is clear that, at the time the sheriff's detective ordered the two-way radios to be turned off, a particular lawyer actually was available and had asked that any questioning of defendant cease. It also is clear that defendant was

not informed of those facts before he gave his videotaped confession. In that state of ignorance, defendant was prevented from making an informed or knowing choice in the matter of waiver of his right to have counsel's assistance in determining whether to incriminate himself.

■ The findings of fact of the trial court in the present case indicate that the detective's intention in sequestering defendant was benign, but that is beside the point. The constitutional principle involved is clear, as our foregoing review of the law demonstrates, and is not dependent on any particular state of mind on the part of officers whose actions have the effect of thwarting a defendant's rights under Article I, section 12. In *State v. Haynes, supra*, this court reversed a conviction and remanded the case for a new trial because the trial court had denied suppression of a videotaped reenactment. Here, as in *Haynes*, the conduct of the deputies both failed to honor the lawyer's invocation of defendant's right to remain silent and kept defendant from making an informed choice whether to incriminate himself by preventing defendant from learning of the existence of the lawyer and of the lawyer's desires. Accordingly, the evidence in question should have been suppressed.[6]

The rationale for not permitting the outcome of a trial to rest on evidence that should have been suppressed has been restated recently by this court. In *State v. Davis*, 313 Or 246, 253-54, 834 P2d 1008 (1992), this court stated:

"This court has declared that evidence is suppressed for violations of the Oregon Constitution 'to preserve * * * rights to the same extent as if the government's officers had stayed within the law.' *State v. Davis, supra*, [295 Or 227,

---

[6] Although our decision in this case is grounded in Article I, section 12, of the Oregon Constitution, we note that other courts that have been faced with this issue have reached a similar conclusion under their own law. *See, e.g., Weber v. State*, 457 A2d 674 (Del 1983); *Haliburton v. State*, 514 So 2d 1088 (Fla 1987); *People v. McCauley*, 228 Ill App 3d 893, 595 NE2d 583 (1992); *State v. Arceneaux*, 425 So 2d 740 (La 1983); *State v. Jackson*, 303 So 2d 734 (La 1974); *Commonwealth v. McKenna*, 355 Mass 313, 244 NE2d 560 (1969); *People v. Wright*, 441 Mich 140, 490 NW2d 351 (1992); *People v. Pinzon*, 44 NY2d 458, 406 NYS2d 268, 377 NE2d 721 (1978); *Lewis v. State*, 695 P2d 528 (Okla Crim 1984); *Commonwealth v. Hilliard*, 471 Pa 318, 370 A2d 322 (1977); *Roeder v. State*, 768 SW2d 745 (Tex App 1988); *Dunn v. State*, 696 SW2d 561 (Tex Crim App 1985), *cert den* 475 US 1089 (1986); *State v. Middleton*, 399 NW2d 917 (Wis App 1986); and *People v. Bundy*, 79 Ill App 3d 127, 34 Ill Dec 670, 398 NE2d 345 (1979).

234, 666 P2d 802 (1983)]. * * * In the context of a criminal prosecution, the focus then is on protecting the individual's rights *vis-a-vis* the government * * *.

"This focus on individual protection under the exclusionary rule, a rule that operates to vindicate a constitutional right in the courts, supports the constitutional rule * * *. [T]he constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution. Where that is true, the Oregon constitutional protections apply."

Failure of the trial court to suppress the evidence is reversible error of constitutional magnitude.

The sentence of death is vacated, and the case is remanded to the circuit court for further proceedings.[7]

---

[7] Defendant asserts additional assignments of error. Because the basis for the other assignments of error may not necessarily recur on remand, we do not address them.