Argued and submitted May 8, 1998, judgment of conviction and sentence of death
affirmed August 12, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID LYNN SIMONSEN,
*Appellant.*

## (CC 88CR-1816; SC S43487)

986 P2d 566

Laura Graser, Portland, argued the cause and filed the brief and additional authorities for appellant.

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Holly A. Vance, Assistant Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.*

CARSON, C. J.

---

* Kulongoski, J., did not participate in the consideration or decision of this case.

## CARSON, C. J.

This criminal case is before us on automatic review of defendant's conviction for aggravated murder and a sentence of death. Defendant assigns error to the trial court's refusal to allow him to withdraw his guilty pleas and also challenges the death sentence that the court entered in his third sentencing-phase proceeding. We affirm the judgment of conviction and the sentence of death.

### I. FACTS

On September 3, 1988, the bodies of two women were found in a remote area near Coquille. Both women, who had been dead for two or three days, were nude from the waist down. They had been tied together at the wrists and shot in the head from close range with a shotgun. Police found a great deal of physical evidence at the scene, including tire tracks from a small automobile.

Investigators eventually determined that the victims were from West Germany. A week after the bodies were discovered, two witnesses separately came forward to report that defendant had said that he and a man named Jeff Williams had been involved in shooting two women with a sawed-off shotgun. On September 11, 1988, police arrested defendant. After being advised of his rights, defendant gave two statements confessing that he and Williams had abducted, raped, and murdered the women. As a result of defendant's confessions, investigators eventually recovered significant evidence implicating defendant, including the suspect automobile and the murder weapon.

After being charged with two counts of aggravated murder, defendant pleaded guilty. The trial court conducted a penalty-phase proceeding. The jury answered the penalty-phase questions put to it in the affirmative, and the trial court sentenced defendant to death.

On October 4, 1990, on automatic review, this court affirmed defendant's convictions, but vacated the sentence of death, because the jury was not presented with the "fourth question" under ORS 163.150 (1989). *State v. Simonsen*, 310 Or 412, 798 P2d 241 (1990) (*Simonsen I*); *see generally State*

*v. Wagner,* 309 Or 5, 14-20, 786 P2d 93 (1990) (setting out reasons that "fourth question" must be given).

On remand, defendant again was sentenced to death. However, on automatic review of that sentence, this court held that the state had obtained evidence against defendant in violation of his right against self-incrimination under Article I, section 12, of the Oregon Constitution. *State v. Simonsen,* 319 Or 510, 514, 878 P2d 409 (1994) (*Simonsen II*). Accordingly, this court again vacated the sentence and remanded the case for a third penalty-phase proceeding. *Id.* at 519. At the close of that proceeding, the jury again answered the penalty-phase questions in the affirmative and the trial court sentenced defendant to death. This automatic review followed.

## II. ASSIGNMENTS OF ERROR

We have considered each of defendant's assignments of error. Several of those assignments were not preserved for appeal or are precluded by the doctrine of the law of the case. *See Koch v. So. Pac. Transp. Co.,* 274 Or 499, 512, 547 P2d 589 (1976) (discussing doctrine). Other assignments of error present questions that do not warrant discussion in this opinion because they have been resolved in other decisions by this court. The remaining issues are discussed below.

A. *The Trial Court's Refusal to Allow Defendant to Withdraw his 1988 Guilty Pleas*

In 1995, defendant moved to withdraw his guilty pleas, which had been entered more than six years earlier. The trial court denied the motion. Defendant argues that the trial court should have allowed him to withdraw his pleas because "the circumstances were so different when he pleaded." According to defendant, that was so because, when he pleaded guilty, the "fourth question" had not yet been added to ORS 163.150 (1989) and also because defendant mistakenly had believed that a videotaped reenactment of the crime could be used against him in court.

Under ORS 135.365, a trial court "may *at any time before judgment,* upon a plea of guilty or no contest, permit [a plea of guilty] to be withdrawn and a plea of not guilty substituted therefor." (Emphasis added.) As discussed, at the

time of defendant's motion, the trial court already had entered judgment. Although this court later vacated and remanded defendant's *sentence* in *Simonsen I*, this court affirmed the trial court's judgment with regard to defendant's guilt. Thus, under ORS 135.365, defendant was not entitled to withdraw his guilty plea, because judgment already had been entered with regard to his guilt at the time of his motion.

B. *Denial of Defendant's Motion to Exclude Certain Prospective Jurors*

■ Defendant next challenges the trial court's denial of his motion to dismiss the prospective jurors who had heard about his previous death sentences. During *voir dire*, after 10 jurors had been selected, the trial court began questioning another potential juror, Denton, who stated that he had heard about defendant's case on the radio "back when they had just overturned * * * the death sentence." Defendant objected to that statement and moved to "excuse the entire jury panel and the rest of the room for cause," because they had heard excludable information. The trial court denied defendant's motion, reasoning that a cautionary jury instruction would be a sufficient remedy. Before excusing the jury for the day, the trial court gave the following instruction:

"We've had to excuse different people—some for cause it's called, where they stated they've had a specific opinion or feeling, and others on the preemptory [*sic*]. What those people say, of course, we wanted to hear because that's why we're asking for information.

"But, I want to make sure everybody knows that what anybody says has got to be disregarded by the jury. You can't consider what any juror has said when they have been excused, or why they've been excused. All of that is irrelevant, and not for consideration. It's not for you to take into your mind and remember. You're to disregard what any other juror has basically said."

Defendant assigns error to the trial court's refusal to dismiss all the potential jurors who were present when Denton referred to defendant's earlier death sentences, arguing that their knowledge of those sentences made the jurors

unable to try the case impartially. Thus, in essence, defendant argues that the jury's knowledge of his prior death sentences made them biased.

A trial court's determination whether a juror in a criminal trial must be excluded for actual bias is governed by ORCP 57 D(1)(g). ORS 136.210(1). "Actual bias" on the part of a juror in a criminal trial is defined by ORCP 57 D(1)(g) as "the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror."

■ We review trial court determinations regarding the presence or absence of actual bias under ORCP 57 D(1)(g) for abuse of discretion. *State v. Montez*, 309 Or 564, 575, 789 P2d 1352 (1990) (*Montez I*). In *Montez I*, this court noted that the trial court "has the advantage, which we lack, of seeing the challenged prospective juror and observing the juror's demeanor, apparent intelligence and candor." *Ibid.* The court also noted that "[t]he trial court's judgment as to a prospective juror's ultimate qualifications is entitled to great weight." *Ibid.*

This court has not addressed the question whether an inadvertent and passing reference to a defendant's earlier death sentence during *voir dire* would require the dismissal of a jury panel. However, as the state correctly points out, several of this court's decisions arising from the denial of a motion for mistrial suggest the answer. That is so because the central issue in a motion for mistrial—whether the juror's knowledge will prejudice the defendant—is substantially similar to the pivotal question under ORCP 57 D(1)(g), that is, whether the juror can try the issue "impartially and without prejudice to the substantial rights of the party challenging the juror."

In *State v. Pratt*, 316 Or 561, 583, 853 P2d 827 (1993), this court held that a trial court did not abuse its discretion by denying a motion for mistrial after a witness had referred to the defendant's presence on death row. This court noted that the statement at issue was "isolated and made in passing" and that the state "did not capitalize on the disclosure in any way." *Ibid.* (internal quotation marks omitted);

*see also State v. Farrar*, 309 Or 132, 164, 786 P2d 161 (1990) (mistrial not required where improper statement made in passing and where state did not capitalize on disclosure).

Likewise, in the present case, Denton's statement was brief and inadvertent, so much so that the trial court had to refer to the transcript to confirm its contents. Also, the prosecutor did not attempt to capitalize on the disclosure. The trial court, having heard the statement in context, concluded that it did not require dismissing the jury panel. We find no abuse of discretion in that ruling.[1]

C. *Service by a Juror Who Had Been Dismissed from Prior Service Within Two Years*

■ During *voir dire*, the trial court questioned a prospective juror, Johnson, who stated that, in September 1994—21 months earlier—she had been called to serve as a juror in an unrelated case. During questioning by defense counsel, Johnson stated that she had been a member of a jury panel "two years ago," but had not been selected to serve at trial. Defense counsel did not challenge Johnson for cause.

Defendant now argues that the trial court erred by allowing Johnson to serve because she was ineligible under ORS 10.030(4) (1993), which provided:

"No person is eligible to act as a juror in any circuit or district court of this state within 24 months after being discharged from jury service in a federal court in this state or circuit or district court of this state unless that person's service as a juror is required because of a need for additional jurors."

However, defendant's failure to object to Johnson's eligibility during *voir dire* precludes us from considering his argument. This court has held that the failure to object to the eligibility

---

[1] Defendant argues also that the trial court's cautionary jury instruction was an insufficient remedy because it was "so oblique it was impossible to tell that it applied to Denton's comment." However, the record reflects that defendant not only failed to object to the form of the instruction but, in fact, specifically asked that any instruction be stated generally so as to avoid reference to any particular potential juror. Specifically, defendant asked that any jury instruction be given later in the day "so that it's not so obvious that we're referring to one particular juror." Further, when the trial court offered a synopsis of its preferred instruction, defense counsel responded, "[s]omething along that would be good."

of a juror during *voir dire* waives a defendant's right to appeal based upon the juror's service. *State v. Benson*, 235 Or 291, 293-94, 384 P2d 208 (1963). In *State v. Powers*, 10 Or 145, 151, 45 Am Rep 138 (1882), this court explained:

> "Were a defendant allowed to take his challenge to the jurors after the trial, he never would do it before, but would always rather depend upon moving it to the court after the trial—for if he should be acquitted he would say nothing about the disqualification of the juror, and if convicted, he could avoid judgment by offering his objection. This in fact would be placing him in a situation totally exempt from danger and from punishment, so long as he could get a juror sworn against whom he could offer any legal objection, and would give him the additional advantage of several chances for his acquittal."

(Internal quotation marks omitted.)

Defendant concedes that the foregoing preservation rule prevents him from challenging Johnson's presence in his own behalf. However, he asserts that his case is distinguishable because he raises the issue in behalf of Johnson, who suffered the "subtle" damage of infringement on her "right to be required to serve only once every two years."[2]

However, even were we to decide that defendant could raise this issue in behalf of a juror—a determination we do not make here—the risk of improper manipulation of the trial court remains the same. Thus, to preserve the issue for review, a defendant must object to the eligibility of a juror *during voir dire*, regardless of whether the juror's presence is challenged in the defendant's or the juror's behalf. Purporting to raise the issue in behalf of a juror will not allow defendant to circumvent the requirements of preservation. Defendant's argument is not preserved. Accordingly, we do not consider this assignment of error.

---

[2] Defendant cites three United States Supreme Court cases in support of his assertion that he has standing to act in Johnson's behalf: *Georgia v. McCollum*, 505 US 42, 112 S Ct 2348, 120 L Ed 2d 33 (1992); *Edmonson v. Leesville Concrete Co.*, 500 US 614, 111 S Ct 2077, 114 L Ed 2d 660 (1991); and *Powers v. Ohio*, 499 US 400, 111 S Ct 1364, 113 L Ed 2d 411 (1991). We note that, in each of those cases, the challenge to the prospective juror was raised during *voir dire*.

## D. *The Trial Court's Refusal to Allow Evidence or Instruct the Jury that Life Sentences "Would" be Consecutive*

Before the third sentencing proceeding, defendant submitted an "omnibus motion" that included the following:

> "Defendant moves that the court allow evidence, or otherwise instruct the jury, on the full nature of the potential sentences which defendant could receive as an alternative to death; including the fact that the court would be required to impose life sentences with 30-year minimums on each count, with possible parole consideration under very limited circumstances after 20 or 40 years; and that the sentences could, *and would*, be consecutive."

(Emphasis in original.) Significantly, the trial court neither allowed nor denied defendant's motion; rather, it took the motion under advisement after the state requested additional time to conduct research on the issue.

Defendant now assigns error to the trial court's refusal to allow him to present evidence that, if he were given life sentences, they would be served consecutively, as well as to the trial court's refusal to provide jury instructions to the same effect. Although defendant bases many of his arguments before this court upon the state and federal constitutions, he made no constitutional arguments to the trial court. Thus, those arguments were not preserved for appeal. To the extent that defendant's nonconstitutional arguments are preserved, we consider them in turn.

As to defendant's first argument, that the trial court denied him the opportunity to introduce evidence that consecutive sentences would be imposed, defendant has failed to direct us to any part of the record that demonstrates an attempt to introduce such evidence. The trial court did not err in denying defendant the opportunity to introduce evidence regarding consecutive sentences, because defendant did not attempt to introduce any such evidence.

As to defendant's argument that the trial court erred by refusing his requested jury instruction, we note that the requested instruction was legally inaccurate. Because ORS 137.123(5) gives the trial court discretion to impose consecutive sentences, it would have been inaccurate for the trial

court to instruct the jury that defendant *would* receive consecutive sentences.[3] *See State v. Williams*, 322 Or 620, 627-28, 912 P2d 364 (1996) (holding that trial court did not err in preventing arguments regarding consecutive sentences because such decision was reserved to trial court's discretion). A trial court commits no error by refusing to provide a jury instruction that is not a correct statement of the law. *Simonsen I*, 310 Or at 417. The trial court did not err by refusing defendant's requested instruction.

E. *Admission of Statement that Defendant Could be Managed on the "Outside"*

■ Defendant next argues that the prosecutor made statements during closing argument that suggested to the jury that, if defendant received a life sentence, he could be sent to a lower-security facility than the Oregon State Penitentiary. Although defendant makes various arguments under this assignment of error—some of which either were not preserved for review or have been addressed separately under other assignments of error—his point appears to be that the prosecutor's closing argument "affirmatively" misled the jury, thereby denying defendant a fair trial.

The statements to which defendant assigns error occurred during closing arguments. Significantly, those statements contained information that the state already had introduced as evidence. Thus, the jury already had heard the evidence at issue here, the admission of which defendant does not challenge on review. Even if we were to agree that

---

[3] ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury, or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course o[f] conduct."

the prosecutor's statements during closing argument were improper, defendant has failed to demonstrate how those statements, which referred to evidence already before the jury, resulted in prejudice. *See State v. Hayward*, 327 Or 397, 408, 963 P2d 667 (1998) (trial court did not abuse its discretion in finding no prejudice based upon introduction of evidence that already had been presented to jury without objection). We see no prejudice in the state's closing argument.

F. *Prosecutor's Statement that an Inmate had Testified Despite the Risk of Acquiring a "Snitch Jacket"*

■ During the penalty phase, the state called three witnesses to testify about defendant's attempt to escape from the Coos County Jail while being held pending trial in this case. One of those witnesses, McCall, initially had agreed to help defendant escape, but had changed his mind at the last minute and reported the escape attempt to prison officials. Defendant sought to impeach the testimony of each of the witnesses by suggesting that they had testified in order to avoid prosecution by the state on other charges. During closing arguments, the prosecutor made the following argument that the three witnesses' testimony should be believed:

> "They make something with Mr. McCall. You know, we talked about him a little bit. You've heard us mention snitch jacket. I think the guy that talked about that, was an informant's jacket—Mr. [Pinnell], the aggravated murderer that came and testified and said that's not a good thing. That's not good to have one of those.
>
> "McCall comes in here. Basically he helps foil the escape. And yet he was an accomplice in that, but he basically helps stop the thing. I'm grateful, as a District Attorney, that somebody bothered to tell us. Because if the jailers hadn't been alert, Mr. Simonsen would be gone. So, I'm grateful for that. I'm grateful to Mr. McCall. His motives may not have been the best. He might have been scared. But he also comes in here and testifies under oath.
>
> "That was a long time ago that that happened. He's got a snitch jacket. If he goes to prison, or if Vanessa Mason goes to prison, or if Robert Brown goes to prison, they are marked people. And they came in here and testified under oath. Nobody else in the courtroom had to do that—to expose themselves to any real danger.

"You've got to give those people a little bit of credit. * * *"

Defendant objected to that statement and, outside the presence of the jury, the following colloquy took place:

"[DEFENSE COUNSEL:] * * * I thought that counsel alluded to Mr. Simonsen's failure to testify by saying, 'No one else has been forced to come in here and testify,' et cetera. I move for a mistrial.

"* * * * *

"Okay. He was talking about Ms. Mason and Mr. McCall. They've come in and they had to testify, they've been subpoenaed and they had to testify under oath. Then he made a comment, 'No one else in the Courtroom has been forced to come in and do that.'

"I heard it, and it's an inadvertent, perhaps, reference to Mr. Simonsen not taking the stand. I move for a mistrial on that basis.

"[THE COURT]: Well, I'll deny that. I think that's a stretch because I think the comments were, no one else has a snitch jacket or has something to lose, like these people; and that was the context it was in, not the Defendant failing to testify.

"So, I don't think that anybody could even draw that inference from that comment. So I'll deny the Motion for Mistrial."

■ Defendant assigns error to the trial court's denial of his motion for mistrial. We review the trial court's denial of a motion for mistrial for an abuse of discretion. *State v. Wright*, 323 Or 8, 12, 913 P2d 321 (1996). Defendant cites several cases from this court supporting the proposition that an intentional reference to a defendant's decision not to testify is prohibited by both the state and federal constitutions. That proposition is not in dispute. Rather, the central question here is whether the prosecutor's statement, in fact, constituted such a reference. The trial court concluded that it did not. We agree. The prosecutor's statement, taken in context, was designed to rehabilitate the credibility of three witnesses

who had been impeached by the defense; it was not a comment on defendant's silence. The trial court did not abuse its discretion in denying the motion for mistrial.

G. *Admission of Prosecutor's Allegedly Inflammatory Statements During Closing Arguments*

■　Defendant also assigns error to other statements that the prosecutor made during his closing argument. Specifically, defendant objects to the following statements: (1) a life sentence would "laugh [defendant's] crime off"; (2) "[a]ll [the prosecutor wants] in this case is justice, a punishment that fits the crime according to the law"; (3) defendant should not "walk away" from the crime and go to the Oregon State Penitentiary, which "[s]ounds kind of like a racquetball club, to [the prosecutor]"; and (4) the jurors' "duty" was to sentence defendant to death.

Defendant admits that he failed to object to any of those statements before the trial court. He argues, however, that the prosecutor's arguments were so prejudicial that the trial court had a duty to declare a mistrial *sua sponte*. In other words, defendant argues that the trial court legally was obliged to declare a mistrial on its own motion. It was not. Indeed, as we explain below, we hold that the trial court would not have erred in denying such a motion, even had such a motion been timely made.

■　We review a trial court's failure to grant an ordinary *motion* for mistrial for abuse of discretion. In such cases, "[e]ven if we find the prosecutor's remarks to be improper, tasteless, or inappropriate, we will not find an abuse of discretion * * * unless the effect of the prosecutor's remarks is to deny a defendant a fair trial." *State v. Smith*, 310 Or 1, 24, 791 P2d 836 (1990).

The prosecutor's remarks here did not violate that standard. Defendant relies on two cases as support for his assertion that they do: *Viereck v. United States*, 318 US 236, 63 S Ct 561, 87 L Ed 734 (1943), and *State v. Blodgett*, 50 Or 329, 92 P 820 (1907). In *Viereck*, a case that occurred during World War II, the defendants were prosecuted for failing to register as agents of foreign principals, as was required by

statute at the time. In his closing arguments, the prosecutor in that case made the following statements:

> "This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of a crime, just as much as they are relying upon the protection of the men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.
>
> "As a representative of your Government I am calling upon every one of you to do your duty."

*Viereck*, 318 US at 247-48 n 3 (internal quotation marks omitted). The defendant did not object. Nevertheless, the United States Supreme Court, after reversing on other grounds, stated in *dictum* that the prosecutor's statements "prejudiced petitioner's right to a fair trial, and * * * might well have placed the judgment of conviction in jeopardy." *Id.* at 247.

Defendant asserts that the prosecutor's statements in this case were of the same inflammatory character as those in *Viereck*. We disagree. *Viereck* involved a blatant appeal to the jurors' sense of patriotism during a time of war. The prosecutor, in effect, equated convicting the defendants with contributing to the war effort. Here, we are confronted with an entirely different situation. The prosecutor's arguments, even if verging on sensational, were not so prejudicial that the trial court abused its discretion by failing to declare a mistrial *sua sponte*.

Defendant's reliance on *State v. Blodgett* also is misplaced. Unlike in this case, the defendant in *Blodgett* objected to the questionable statements. 50 Or at 342. The dispute in that case centered around the trial court's failure to respond to the timely objection. By contrast, defendant in this case never raised any objection before the trial court. For the foregoing reasons, we reject defendant's argument under this assignment of error.

## H. *Constitutionality of Oregon's Death Penalty Scheme*

Finally, defendant assigns error to the trial court's denial of his omnibus motion to dismiss the penalty-phase

proceeding, in which he asserted that Oregon's death-penalty scheme is unconstitutional for various reasons. Many of the arguments set out in the motion were addressed by this court in *Simonsen I* and, thus, are the law of the case. *See Koch*, 274 Or at 512 (discussing the doctrine). The remaining arguments either were not preserved or have been rejected by this court in *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145 (1997), *State v. Montez*, 324 Or 343, 927 P2d 64 (1996) (*Montez II*), *Moore*, 324 Or 396, *State v. Cunningham*, 320 Or 47, 880 P2d 431 (1994), *State v. Guzek*, 310 Or 299, 797 P2d 1031 (1990), *Montez I*, 309 Or 564, *State v. Moen*, 309 Or 45, 786 P2d 111 (1990), or *Wagner*, 309 Or 5.

## III. CONCLUSION

For the foregoing reasons, we conclude that none of defendant's assignments of error provides a basis for reversal. Consequently, we affirm defendant's judgment of conviction and sentence of death.

The judgment of conviction and sentence of death are affirmed.