Argued and submitted May 28, affirmed December 10, 2014, petition for review denied April 9, 2015 (357 Or 143)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PARISS PV LOMCHANTHALA,
*Defendant-Appellant.*

Marion County Circuit Court
12C43321; A152232

341 P3d 128

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Brandon Cobb, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

A jury convicted defendant of assaulting a public safety officer, ORS 163.208. On appeal, defendant assigns error to the trial court's refusal to specifically instruct the jury that, to be guilty, defendant had to engage in a "voluntary act." We conclude that defendant was not entitled to his requested instruction and, therefore, affirm.

Salem Police Officer Smith responded to a call of a domestic disturbance in which the suspect, defendant, had left the scene on foot. Defendant had a warrant out for his arrest at the time. Smith reported to a location at a field near a school, where he saw a person matching defendant's description. Smith called out to defendant, told him he was under arrest, and instructed him to show his hands and get down on the ground. Defendant said, "No." When Smith told defendant that there was a warrant out for defendant's arrest, defendant said, "I know." According to Smith, defendant's eyes were red and watery, and defendant had a "thousand[-] yard stare." Defendant turned to squarely face Smith in what Smith described at trial as a "fighting stance."

Smith operates a K-9 police dog unit and had a dog in his vehicle at the time. Smith called for back-up and warned defendant that, if he did not comply, the dog would be released from the car, and defendant would be bitten. Defendant said, "So?" Smith repeated the warning and instructions to defendant several times, but defendant did not comply. Using a remote device, Smith opened the door to his vehicle, releasing the dog, and gave the dog an instruction to bite defendant. The dog chased defendant and bit him, knocking him off balance. Smith then approached and made physical contact with defendant in an attempt to subdue him and take him into custody. As the two men made contact, they slid partway down a slope, coming to rest with their feet elevated above their heads, with Smith on top of defendant. The men continued to wrestle, and the dog continued to inflict bites on defendant. Defendant was grabbing at Smith's head, neck, and waist. At some point, defendant hit Smith in the jaw with his wrist or forearm. Smith's mouth was open at that moment because he was talking to defendant. The impact of the strike slammed Smith's jaw shut.

Back-up officers arrived at the scene, and eventually they were able to take defendant into custody. Smith felt pain in his jaw for approximately two hours after the encounter. Smith testified that, on a scale of one to 10, with 10 being the most extreme pain, Smith rated his pain at that time a five. He did not seek treatment for the injury. Defendant was treated for several dog bites.

The state charged defendant with assaulting a public safety officer, ORS 163.208.[1] Before trial, defendant requested that the court issue Uniform Criminal Jury Instruction 1065, which reads as follows:

"For criminal liability, Oregon law requires the performance of a voluntary act or omission.

"(1)  Act—a bodily movement.

"(2)  Voluntary act—a bodily movement performed consciously.

"(3)  Omission—a failure to perform an act the performance of which is required by law.

"(4)  Conduct—an act or omission and its accompanying mental state.

"(5)  To act—either to perform an act or to omit to perform an act.

"(6)  Culpable mental state—means intentionally, knowingly, recklessly, or with criminal negligence."

Defendant argued to the trial court that the instruction—at least an instruction incorporating subsections (2), (4), and (6)—was necessary because defendant would argue to the jury that his physical actions in striking Smith were involuntary under the circumstances. The state objected that defendant's requested instruction was potentially confusing and unnecessary. The trial court agreed, noting that defendant's instruction "introduces additional terms" that were unrelated to other instructions or to the

---

[1] ORS 163.208(1) provides:

"A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to the other person, knowing the other person to be a peace officer * * *, and while the other person is acting in the course of official duty."

elements of the charged offense. Instead, the trial court gave the following instruction:

> "In this case to establish the crime of assaulting a public safety officer, the State must prove beyond a reasonable doubt the following five elements: That the act occurred in Marion County, Oregon; that the act occurred on or about May 12, 2012; that [defendant] knowingly caused physical injury to [Smith]; that [defendant] knew [Smith] to be a peace officer; and [Smith] was acting in the course of official duty.

> "A person acts knowingly or with knowledge if that person acts with an awareness that his or her conduct is of a particular nature, or that a particular circumstance exists. When used in the phrase 'knowingly caused physical injury to * * *,' knowingly or with knowledge means that the Defendant was aware of the assaultive nature of his conduct. The term 'physical injury' means an injury that impairs a person's physical condition, or causes substantial pain."

Defendant was convicted. On appeal, defendant's sole assignment of error is to the trial court's refusal to give his requested "voluntary act" instruction.

We review a trial court's refusal to give a defendant's requested jury instruction for errors of law. *State v. Moore*, 324 Or 396, 428-29, 927 P2d 1073 (1996). A defendant is generally entitled to have a jury instruction given if there is evidence to support it and if the instruction accurately states the law. *State v. Thaxton*, 190 Or App 351, 356, 79 P3d 897 (2003). Failure to give a requested instruction is not reversible error, however, if the instruction that the trial court gave, "although not in the form requested, adequately covers the subject of the requested instruction." *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993). If we conclude that the trial court's instructions, as a whole, were erroneous, we must determine whether defendant was prejudiced. *State v. Williams*, 313 Or 19, 38, 828 P2d 1006, *cert den*, 506 US 858 (1992).

Defendant's argument on appeal is straightforward. The jury, he contends, could have found that defendant was off-balance and distracted by the dog during the struggle with Smith and, therefore, that defendant's "flailing" of his

arms did not constitute a "voluntary act." Defendant argues that the trial court's instruction, which described the meaning of "knowingly," was inadequate because the jury could have found that defendant "knew" that his arms were coming into contact with Smith but also that defendant's "act" of flailing his arms was not "voluntary." The state responds that the evidence at trial did not support defendant's requested instruction, and that, in any event, the instructions that the trial court gave adequately covered the subject matter of the instruction that defendant wanted.

We do not necessarily agree with the state's argument that the trial court's instruction adequately covered the subject matter, *if* the evidence at trial supported defendant's instruction. The state argues that, because the jury was instructed that it had to find that defendant acted "knowingly" (*i.e.*, was "aware of the assaultive nature of his conduct"), then the jury could not have concluded that an involuntary act could suffice. The state's argument appears to conflate the mental state requirement, *i.e.*, *mens rea*, with the requirement that any criminal conduct be voluntary, *i.e.*, *actus reus*, foreclosing the possibility that a rational jury could ever find that a person was "aware" of engaging in certain conduct without *voluntarily* engaging in that conduct.

We need not further consider that question, however, because the evidence in this case does not support defendant's requested instruction. Defendant relies entirely on the testimony of Smith and another officer, who described Smith's struggle with defendant. Defendant argues that, from that testimony, which included a description of the dog biting defendant and the two men sliding down the slope, the jury could have inferred that defendant's conduct toward Smith was involuntary.

The problem for defendant is that Smith testified consistently and unequivocally that defendant was not "flailing wildly" and that their physical struggle "was definitely a fight."[2] Smith also testified that, after both men began to

---

[2] During trial, the prosecutor and Smith had the following exchange:

"[THE STATE:] I guess I want to be clear. When he is doing the things he is doing, grabbing your face, and your neck, and your—hitting you in the jaw, and whatnot, again, without talking about speculating on his mental

slip down the embankment, part of defendant's body became lodged against a sign post, which prevented the two men from sliding further, and that the strike to Smith's jaw came at some point after that. In short, the record contains no evidence refuting Smith's testimony that defendant, despite being knocked off balance, resisted Smith by intentionally engaging in physical contact and continuing to fight him throughout the duration of the encounter. Because the evidence does not support defendant's contention that he did not engage in a voluntary act, the trial court did not err in refusing to give defendant's requested instruction.

Affirmed.

---

state, but what was your impression of what was going on there? Was he trying to get away from you? Was he just kind of flailing wildly? What was happening?

"[OFFICER SMITH:] No, it was—it was definitely a fight. I am a defensive tactics instructor for the department, and we classify people that we arrest in three categories; no, maybe and yes. A yes person is; you are under arrest. They turn around and put their hands together. A no person is someone who does absolutely not want to go to jail, and they do actions or words that relay that. And then the maybe person is the one where you say you are under arrest, and they just kind of stand there and look at you, but they really don't do anything.

"From the first command that I gave him to stop, that he was under arrest, he was a no person. I mean, there was no indication at all at any point that he was willing to give up."